J-A04001-22

2022 PA Super 108

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GRANT SKIPPER | : | No. 1160 EDA 2021 |

Appeal from the Order Entered May 3, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-000035-2021

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

OPINION BY LAZARUS, J.:

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Delaware County, granting the motion to suppress filed by Grant Skipper.[1]  After review, we affirm.

In its opinion, the suppression court set forth the following findings of fact:

> On October 2, 2020, at approximately 2:11 a.m., [Corporal William Young (Cpl. Young)] was on duty, alone, in full uniform and operating a marked patrol car patrolling the 800 block of Wanamaker Avenue in Tinicum Township, Delaware County.  It was dark out [and] the roadways were wet from recent rainfall.  [Corporal] Young was traveling southbound in the 800 block of Wanamaker Avenue (Route 420) when he observed a black Dodge Ram pickup truck traveling northbound, without headlights or taillights illuminated.  [Corporal] Young also took note that the pickup truck appeared to be driving at a speed faster than was

---

[1] In accordance with Pa.R.A.P. 311(d), the Commonwealth certified that the suppression order has substantially handicapped its prosecution of the case. **See Commonwealth v. Jones**, 69 A.3d 180, 185 (Pa. 2013) (Commonwealth's appeal of suppression order proper where Commonwealth certifies in good faith that order substantially handicaps prosecution).

safe or prudent for the conditions of the wet roadway, although he did not have any speed measuring devices with him at the time.

As a result of his observations, Cpl. Young made a U-turn and proceeded northbound behind the pickup truck. After losing sight of the truck for only a few seconds, Cpl. Young regained sight of the vehicle again at the intersection of Chester Pike and Route 420, where it was stopped at a red light. The pickup truck now had its lights illuminated. When the light turned green and the pickup truck proceeded through the intersection, Cpl. Young activated his emergency lights to initiate a traffic stop based upon the [M]otor [V]ehicle [C]ode violations that he observed. The pickup truck complied and came to a stop on the 700 block of Lincoln Avenue in Prospect Park Borough.

Prior to exiting his patrol vehicle, Cpl. Young called in the traffic stop . . . and started the process of running the vehicle's tag. While still in his vehicle, Cpl. Young did not observe the occupants of the car make any furtive movements or do[] anything illegal. [Corporal] Young then exited his patrol vehicle and approached . . . the driver's side [of the vehicle].

[Corporal] Young observed a male in the driver's seat, later identified as Christopher Boozer, as well as a front seat passenger, later identified as [Skipper]. While engaging in conversation with [] Boozer, Cpl. Young observed his eyes to be glassy, his speech was slurred, and Cpl. Young could smell an odor of alcohol on his breath and burnt marijuana coming from inside the vehicle. At this time, there were no verbal interactions with [Skipper].

[Corporal] Young recognized both the odor of alcohol and burnt marijuana due to his training and experience. . . . [Corporal] Young was using his flashlight when speaking with [] Boozer but did not see any items of contraband in plain view.

As a result of his observations, Cpl. Young suspected that [] Boozer was driving under the influence and asked him to provide his license, registration, and to step out of the vehicle. [] Boozer's license revealed that he was a suspended driver. [Corporal] Young instructed [] Boozer [to] step to the rear of the vehicle. As [Boozer] was doing so, Cpl. Young observed that he was unsteady on his feet, had a staggered gait, and had an odor of alcohol and burnt marijuana coming directly from his person.

During this time, [Skipper] was still sitting in the passenger seat of the vehicle. At this point, backup from several other officers had arrived including: Officer Wiley and Officer Loiter of the Tinicum Township Police and Officer Vasaline of the Prospect Park Police Department. [Corporal] Young had [] Boozer perform field sobriety tests, which he failed.

[Corporal] Young testified that he conducted a pat down on [] Boozer prior to him completing the tests and located a small amount of marijuana on his person.

[Corporal] Young detained [] Boozer in the back of his police vehicle. [Corporal] Young then approached the passenger side of the pickup truck and had a conversation with [Skipper]. [Skipper] provided Cpl. Young with a valid driver's license.

As no wrongdoing or criminal activity was suspected on the part of [Skipper], Cpl. Young told him that he was free to leave the scene and walk home, as he lived close by. [Skipper] complied and began walking home. There was no testimony that [Skipper] smelled of alcohol or marijuana. In addition, there was no testimony that Cpl. Young asked [Skipper] to drive the vehicle home as [] Boozer was being detained for driving under the influence.

[Corporal] Young made the decision to impound and tow the vehicle. As a result, he ordered an inventory of the car pursuant to a department policy for Tinicum Township (marked as CS-1 at the [suppression] hearing). Chapter 36[,] Section 36.003[] of the inventory policy reads: "It would be the policy of this department that any and all vehicles that are impounded by the department as a result of a full custody arrest, vehicles used in the commission of a crime, [and] abandoned motor vehicle[s], shall be completely inventoried. The reporting member shall list on the initial crime report any and all items that are located in the vehicle."

[Corporal] Young also stated that if a driver was operating a vehicle on a suspended license and/or without proper registration, that would also [fall] within the [above-mentioned] policy to impound the vehicle. [Corporal] Young testified that, should contraband be located during an inventory search, or anything of value, that it would be noted in the incident report.

A search was conducted of [] Boozer's vehicle by Officer Wiley. A [G]lock firearm was located inside the glove compartment and a [T]aurus handgun was [wedged in] between the driver's seat and the center front seat[.] Also located and notated in the report was a bottle of Hennessey [Whiskey] found in the back. [Corporal] Young notated his findings in his affidavit of probable cause (marked as CS-2) and his incident report (marked as CS-3). The affidavit reads that the search was conducted "pursuant to the odor of burnt marijuana and for inventory purposes."

After locating the firearms, police decided to pursue [Skipper,] who was already on his way home. Police pursued him, detained him, and brought him back to return to the scene. [Skipper] complied without issue. Pursuant to a pat[-]down, police recovered two unidentified pills on [Skipper]'s person. . . . [Corporal] Young testified that a search of the car was conducted to find the source of the burnt marijuana but also pursuant to the inventory policy.

[Corporal] Young testified that officers located some personal items belonging to [] Boozer in the vehicle as well, such as: shoes, clothing, and a box, none of which were logged on the inventory report. T[he c]ourt notes that there was [no] indication [that] any personal belongings of [Skipper were] located in the vehicle.

Trial Court Opinion, 6/18/21, at 1-6.

The Commonwealth subsequently charged Skipper with receiving stolen property,[2] possession of firearm prohibited,[3] and possession of controlled substance.[4]

On March 8, 2021, Skipper filed an omnibus pre-trial motion, which included a motion to suppress evidence. Skipper argued, *inter alia*, that he

_____

[2] 18 Pa.C.S.A. § 3925(a).

[3] *Id.* at § 6105(a)(1).

[4] 35 P.S. § 780-113(a)(16).

- 4 -

had an expectation of privacy in the vehicle and that the vehicle was searched without probable cause, consent, or a valid search warrant. On March 10, 2021, Skipper filed two amended omnibus pre-trial motions, in which he argued that Cpl. Young also lacked probable cause to stop the vehicle, and that all physical evidence resulting from the illegal stop and subsequent search and seizure should be suppressed.

On March 12, 2021, the trial court conducted a suppression hearing. At the conclusion of the hearing, the trial court directed the parties to file briefs setting forth their arguments and supporting law. Both parties complied, and on May 3, 2021, the trial court granted Skipper's motion to suppress. On May 3, 2021, the Commonwealth filed a motion to reconsider, which the trial court denied.

The Commonwealth filed a timely notice of appeal[5] and now raises the following claim for our review:

> Did the suppression court err by finding defendant had a reasonable expectation of privacy in the glove compartment and console area of the pickup truck in which he was merely a passenger and when, upon the police telling him that he was free to leave, defendant started walking to his home a few blocks away?

Brief for Appellant, at 5.

We conclude that the Commonwealth has conceded this claim before the trial court, and thus waived it for our review. ***Commonwealth v.***

---

[5] The trial court did not order a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal and the Commonwealth did not file one.

*Arrington*, 233 A.3d 910, 918 n.5 (Pa. Super. 2020) (Commonwealth's failure to challenge expectation of privacy does not trigger defendant's burden of persuasion and waives claim for appeal) (citing **Commonwealth v. Johnson**, 33 A.3d 122 (Pa. Super. 2011)). Here, Skipper filed a timely motion to suppress evidence, and two amended motions to suppress. *See* Omnibus Pre-Trial Motion, 3/8/21, at 1-3 (unnumbered); First Amended Omnibus Pre-Trial Motion, 3/10/22, at 1-2 (unnumbered); Second Amended Omnibus Pre-Trial Motion, 3/10/21, at 1-3 (unnumbered). A suppression hearing on the motions was held, at which time the Commonwealth did not contest or raise Skipper's expectation of privacy. *See* Trial Court Opinion, 5/3/21, at 6 (acknowledging that Commonwealth's suppression arguments focused solely on basis for vehicle stop, inventory search of vehicle, and search of Skipper). The trial court, prior to ruling on the suppression motions, directed the parties to file briefs and argument. *See* N.T. Suppression Hearing, 3/12/21, at 102-05. The Commonwealth, in its brief before the trial court, again did *not* challenge Skipper's expectation of privacy. *See* Commonwealth's Memorandum of Law, 4-23/21, at 1-9. Thus, the trial court, in its order and opinion granting the motion to suppress, noted that the Commonwealth had conceded Skipper's expectation of privacy by failing to raise a timely challenge. *See* Trial Court Order and Opinion, 5/3/21, at 6. In response to the trial court's ruling, the Commonwealth filed a motion to reconsider in which it raised, for the first time, a challenge to Skipper's expectation of privacy in the vehicle. *See* Motion to Reconsider, 5/3/21, at 1-4 (unnumbered).

- 6 -

Importantly, a challenge to a defendant's expectation of privacy is woven into the complex burden shifting involved in suppression hearings. ***See Enimpah***, 106 A.3d 695, 700-01 (Pa. 2014) (**before defendant must prove privacy interest in area searched, Commonwealth must initially satisfy its burden of production by presenting evidence showing defendant lacked any protected privacy interest**; where Commonwealth fails to bear this initial burden, burden never shifts to defendant to prove privacy interest). Our Supreme Court has explained that, while the expectation of privacy can be described as a "preliminary" matter, Pa.R.Crim.P. 581(H) nevertheless requires the Commonwealth to both challenge a defendant's expectation of privacy **and** demonstrate that the defendant lacked an expectation of privacy. ***See Enimpah***, 106 A.3d at 701-02 (discussing Rule 581(H) and determining that "[t]he Commonwealth may concede the privacy interest, choosing to contest only the legality of the police conduct; if it does so, the defendant's 'reasonable expectation of privacy' need not be established"); ***see also*** Pa.R.Crim.P. 581(H) (providing Commonwealth bears burden to present evidence that defendant's constitutional rights were not infringed). Only after meeting these requirements does the burden of persuasion shift to the defendant to demonstrate that he had a reasonable expectation of privacy in the area searched. ***Enimpah***, 106 A.3d at 700-01.

Instantly, our review, as highlighted above, reveals that the Commonwealth did not challenge Skipper's expectation of privacy until **after**

the trial court had already granted the suppression motion.  At the suppression hearing and in its memorandum of law, the Commonwealth focused solely on the legality of the police conduct and, thus, the Commonwealth did not properly challenge Skipper's expectation of privacy.  **See** N.T. Suppression Hearing, 3/12/21, at 1-105 (Commonwealth presenting evidence of, *inter alia*, vehicle stop, inventory search, search of Skipper, and trial court ordering briefs in lieu of argument); Commonwealth's Memorandum of Law, 4/23/21, at 1-9; Trial Court Opinion, 5/3/21, at 6 (determining Commonwealth had conceded expectation of privacy by failing to raise challenge); **see also Enimpah**, 106 A.3d 701-02.

Based upon the foregoing, we conclude that the Commonwealth has waived its claim on appeal because it failed to meet its initial burden and, instead, conceded the expectation of privacy by focusing exclusively on the legality of the police conduct.  **See Arrington**, **supra**; **Enimpah**, **supra**;

Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived").

Accordingly, we affirm.[6, 7]

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*
Date: *6/9/2022*

---

[6] We note that in its Rule 1925(a) opinion, the trial court, relying on ***Commonwealth v. Santiago***, 822 A.2d 716 (Pa. Super. 2003), determined that the Commonwealth did not waive its challenge to Skipper's expectation of privacy by raising it in the motion to reconsider. We disagree.

In ***Santiago***, this Court addressed whether the Commonwealth could raise, in a motion to reconsider, a late claim regarding the **law of the case doctrine**. ***See id.*** at 722-24. This Court declined to find waiver due to the procedural history of that case, but we reminded the Commonwealth that such a claim **should** have been raised at the earliest possible time, i.e., in response to the defendant's motion or at the subsequent hearing. ***Id.***

Instantly, the similarities between the instant case and ***Santiago*** end at the filing of the motion to reconsider. As we highlighted above, the Commonwealth's burden of production is preliminary, the challenge **must** be invoked at the time of suppression proceedings, and the Commonwealth can concede a challenge to the expectation of privacy by, instead, choosing "to focus solely on the legality of police conduct." ***See Enimpah***, ***supra***; ***see also Arrington***, ***supra***.

[7] Additionally, we are unpersuaded by the Commonwealth's reliance on ***Commonwealth v. Swann***, 241 A.3d 429 (Table) (Pa. Super. filed Oct. 15, 2020) (unpublished memorandum), in its reply brief. Notably, in ***Swann***, this Court assumed, *arguendo*, that the defendant had a right to privacy in the area searched. ***See id.*** at n.6. However, ***Swann*** is inapplicable to our analysis, because the defendant's expectation of privacy was not raised on appeal in that case. ***See id.***; ***see Enimpah***, ***supra***.