J-S32021-23

2023 PA Super 205

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JENNIFER N. SMITH | : | No. 315 MDA 2023 |

Appeal from the Order Entered January 24, 2023
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000449-2021

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

OPINION BY KUNSELMAN, J.:         **FILED: OCTOBER 16, 2023**

In this interlocutory appeal as of right,[1] the Commonwealth seeks to challenge the order granting Jennifer N. Smith's suppression motion. Because it did not preserve various theories for appellate review, we affirm.

On October 7, 2021, Joel Gross, an agent with the Pennsylvania Board of Probation and Parole ("the Board") received an e-mail from a colleague, Agent Liam Sweeney. According to that e-mail, a third-party parolee, Danielle Parsons, told Agent Sweeney that she and two other women "drove to [Ms. Smith's] house [and] bought bath salts." N.T., 12/19/22, at 38. However, the e-mail did not include the date on which this alleged transaction occurred. *See id.*

Based on the e-mail, Agent Gross sought permission from his supervisor to conduct an administrative search of the Smith residence, because Ms. Smith was under his supervision. He intended to look for evidence that she

---

[1] *See* Pa.R.A.P. 311(d).

had violated parole "condition number 5 - - not to possess or use any drugs." *Id.* at 41. The supervisor granted the request, but the Board agents delayed their search for a week, until October 13, 2021, due to Columbus Day and staffing shortages.

When Board agents arrived at her home, Ms. Smith answered the door. Agent Gross immediately handcuffed her. He entered the house and found what he considered to be evidence "indicative that there was new criminal - - or criminal activity" afoot. *Id.* The agents therefore stopped their search to "turn over [the] investigation to the police." *Id.* at 45-46. They called Chief David Winkleman of Pine Creek Township Police Department. He arrived on scene 20 to 30 minutes later.

Agent Gross told Chief Winkleman what the administrative search had revealed. Next, he walked the chief through the residence, and both of them "took pictures." *Id.* at 46; *see also id.* at 60. The chief "document[ed narcotics and drug paraphernalia] for the fact of preparation of the search warrant." *Id.* at 60. He then exited the building and applied for a search warrant through another affiant, an agent with the Office of the Attorney General of Pennsylvania.

A magisterial district judge issued the warrant. Police reentered Ms. Smith's home, seized physical evidence, arrested her, and charged Ms. Smith with criminal conspiracy and various drug-related offenses.[2]

---

[2] *See* 18 Pa.C.S.A. § 903 and 35 Pa.C.S.A. §§ 780-133(a)(16), (a)(30), and (a)(32).

Ms. Smith filed a motion to suppress the evidence. The court of common pleas held an evidentiary hearing and directed the parties to file briefs.

In its brief, the Commonwealth contended Agent Gross, on behalf of the Board, had reasonable suspicion to perform an administrative search of the Smith home. **See** Commonwealth's 1/3/23 Suppression-Court Brief at 1-2. It also argued that, when Chief Winkleman walked through the home to take pictures, prior to getting a search warrant, his action "was not an added search within the meaning of either [c]onstitution, because he did not offend a recognized expectation of privacy." **Id.** at 3. It claimed Ms. Smith retained no reasonable expectation of privacy in the items that Agent Gross already uncovered during his administrative search.

Three weeks later, the court issued an Opinion and Order granting the suppression motion due to two constitutional violations.

First, the suppression court ruled the information in Agent Sweeney's October 7th e-mail to Agent Gross was insufficient to provide Agent Gross with reasonable suspicion that Ms. Smith was currently violating her parole. **See** Suppression Court Opinion, 1/24/23, at 13-18. It also found the underlying tip from Danielle Parsons to Agent Sweeney had gone stale, because Parsons provided that information over a month prior to the October 13, 2021 search. Thus, the suppression court held that Agent Gross's administrative search of the residence was unreasonable and, as a result, unconstitutional.

Second, the suppression court ruled Chief Winkleman's walkthrough of Ms. Smith's residence was a warrantless search by the police department that

the federal and state constitutions prohibited. In the suppression court's view, a law-enforcement search occurred separate from the administrative search, even though Agent Gross accompanied the chief. Given "the Commonwealth has not alleged that exigent circumstances existed . . . the entry by Chief Winkleman is clearly in violation of [Ms. Smith's] constitutional rights." *Id.* at 19.

On February 3, 2023, the Commonwealth moved for reconsideration of the order granting suppression. For the first time, it presented an alternative theory for admitting the evidence at trial – the doctrine of inevitable discovery. *See* Commonwealth's Motion for Reconsideration at 4. The Commonwealth asserted Chief Winkleman's warrantless search was unnecessary to procure a search warrant. "Simply put, Agent Gross's information would've arrived in exactly the same form to [the affiant and magisterial district judge] without Chief Winkleman's participation." *Id.*

The court of common pleas summarily denied reconsideration, and this timely appeal followed.

The Commonwealth raises two appellate issues, which we reordered for ease of disposition:

> 1.  Whether the [suppression] court committed reversible error when it found [Chief] Winkleman's after-the-fact "walkthrough" . . . to be done "clearly in violation of [Ms. Smith's] constitutional rights?"
>
> 2.  Whether the [suppression] court committed reversible error when it found that reasonable suspicion did not exist, because the court decided the tip provided by a

known informant that [Ms. Smith] was selling drugs
[out of her home] was unsupported and was too old?

Commonwealth's Brief at 9.

We begin our analysis with Chief Winkleman's warrantless walkthrough of Ms. Smith's home, during which he gathered evidence by taking pictures of various incriminating items.

The Commonwealth makes two arguments in this regard. First, it claims Ms. Smith retained no reasonable expectation of privacy inside her home. **See** Commonwealth's Brief at 21-22. It asserts she forfeited her privacy rights once Agent Gross entered the residence and saw evidence of drug dealing. Hence, the Commonwealth believes the chief did not conduct a "search" in an area where Ms. Smith retained a reasonable expectation of privacy.

Second, the Commonwealth contends the evidence Chief Winkleman photographed and eventually seized should not be subject to the exclusionary rule.[3] The Commonwealth argues police would have inevitably discovered that evidence based solely on Agent Gross's administrative search, because the magisterial district judge would have issued a search warrant in light of Agent Gross's observations, even if Chief Winkleman had never performed a warrantless search of the home. **See id.** at 22. In other words, the chief's

---

[3] **See, e.g.**, **Wong Sun v. United States**, 371 U.S. 471 (1963) (holding that, under the exclusionary rule, because the investigating agents obtained defendant's statements and seized narcotics during an illegal entry of a residence, that evidence was fruit of the poisonous tree that must be excused at trial).

walkthrough and pictures did not secure the warrant – the administrative search did.

According to Ms. Smith, the Commonwealth waived both arguments. **See** Smith's Brief at 28, 31-32.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020).

First, we address the Commonwealth's claim that Ms. Smith had no reasonable expectation of privacy inside her home following Agent Gross's administrative search.

Upon receiving the Commonwealth's notice of appeal, the trial court directed it to file a Statement of Errors Complained of on Appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925. In its order, the trial court warned the Commonwealth that failure to comply with Rule 1925 would result in waiver of any issues not raised in the 1925(b) Statement. **See** T.C.O., 2/28/23, at 1.

Rule of Appellate Procedure 1925(b) is very clear and very strict. "The Statement **shall** concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

This is because, the "absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review." ***Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998). "Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process." ***Id.***

In its 1925(b) Statement, the Commonwealth only raised one issue regarding Chief Winkleman. It identified the alleged error as: "Whether the [suppression c]ourt's reasoning erred, when it called Chief Winkleman's entry into the residence a second, unconstitutional search without analyzing the application of inevitable discovery." Commonwealth's Statement of Errors at 2. Thus, the question of Ms. Smith's privacy expectation in her home following Agent Gross's administrative search is missing from the 1925(b) Statement. The Commonwealth has waived that issue.

Turning to the inevitable-discovery argument, while the Commonwealth included it in the 1925(b) Statement, the prosecution nevertheless committed waiver of this theory, as well. In its 1925(a) Opinion, the trial court said, "the Commonwealth . . . never argued that theory or presented any case law on said theory before [the suppression c]ourt; and, therefore, [the court] finds that the Commonwealth has waived this argument." Trial Court Opinion, 3/21/23, at 2. We agree.

When a defendant moves to suppress the prosecution's evidence, the "Commonwealth shall have the burden of going forward with the evidence and

of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). It "satisfies that burden if it proves to the satisfaction of the suppression court that the evidence was properly seized." *In re L.J.*, 79 A.3d 1073, 1086 (Pa. 2013).

Recently, in **Commonwealth v. Skipper**, 277 A.3d 617 (Pa. Super. 2022), this Court found the Commonwealth waived the issue of a defendant's expectation of privacy in a searched vehicle by waiting until its motion for reconsideration to raise that issue. In **Skipper**, the trial court "conducted a suppression hearing . . . [and] directed the parties to file briefs setting forth their arguments and supporting law." *Id.* at 620.

However, the "Commonwealth, in its brief before the [suppression] court . . . did not challenge [defendant's] expectation of privacy. *Id.* at 621. "Thus, the [suppression] court, in its order and opinion granting the motion to suppress, noted the Commonwealth had conceded [defendant's] expectation of privacy by failing to raise a timely challenge." *Id.* Next, the Commonwealth moved for reconsideration and, for the first time, raised the issue of defendant's expectation of privacy in the vehicle.

This Court stated, "the Commonwealth did not challenge [defendant's] expectation of privacy until **after** the trial court had already granted the suppression motion." *Id.* (emphasis in original). "At the suppression hearing and in its memorandum of law, the Commonwealth focused solely on the legality of the police conduct and, thus, the Commonwealth did not properly challenge [defendant's] expectation of privacy" to meet its burden under

Pa.R.Crim.P. 581(H). *Id.* As such, we dismissed the issue of whether the defendant had a reasonable privacy expectation in the vehicle as waived.

Here, the Commonwealth repeated that procedural mistake. After the suppression hearing, the court directed the parties to brief their legal arguments regarding whether police lawfully seized the evidence against Ms. Smith. In its brief, the Commonwealth never mentioned inevitable discovery. It only contended Ms. Smith retained no reasonable expectation of privacy in her home. Hence, it failed to argue to the suppression court that, if Chief Winkleman performed an unconstitutional search of the home, the court should nevertheless admit the evidence at trial under the doctrine of inevitable discovery.

As in *Skipper*, the Commonwealth waited until *after* the suppression court had ruled on the motion to suppress to raise a new theory of inevitable discovery. Thus, the Commonwealth "waived [this] claim on appeal, because it failed to meet its initial burden, and, instead, conceded" the exclusionary rule applied to the evidence if unconstitutionally seized. *Id.* at 621.

Accordingly, we hold that, after the issuance of an order and opinion granting suppression, the Commonwealth may not offer a new legal theory to oppose suppression in a motion for reconsideration. Such a practice would eviscerate the mandate that the Commonwealth be prepared to go "forward with the evidence and [bear the burden] of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H).

Were we to endorse the procedure that the Commonwealth employed here, we would force defendants to relitigate motions to suppress indefinitely with each new motion for reconsideration that the Commonwealth files. The prosecution could retry the suppression motion over and over, testing out various legal theories, until it found one that the suppression court accepted. Rule of Criminal Procedure 581 prohibits such gamesmanship, because the Rule aims "to provide **one single procedure** for the suppression of evidence alleged to have been obtained in violation of the defendant's rights." Pa.R.Crim.P. 581 *Comment* (emphasis added). Piecemeal litigation by reconsideration motion produces multiple procedures concerning suppression that the framers of Rule 581 never envisioned or desired. Therefore, the Commonwealth must meet its burdens of production and persuasion based on theories it argues **before** a suppression court rules on a motion to suppress.

This requirement is not overly demanding. Rule 581 simply asks the Commonwealth, which possesses the evidence and access to law-enforcement witnesses, to take the time to develop all legal theories against a suppression motion prior to or shortly after the suppression hearing. If it does not, the Commonwealth concedes and waives any theory not raised and argued during the suppression hearing or in its initial brief to the suppression court. **See Skipper**, **supra**.

Issues of inevitable discovery and Chief Winkleman's search of the home dismissed as waived.

Issue of whether Agent Gross's administrative search was supported by reasonable suspicion dismissed as moot.

Order affirmed.  Case remanded for further proceedings consistent with this Opinion.

Jurisdiction relinquished.

Judge Dubow joins this Opinion.

Judge Nichols concurs in result.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/16/2023