J-S35019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAL JOEL BURRELL | : | No. 527 MDA 2024 |

Appeal from the Order Entered March 20, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002110-2023

BEFORE:  PANELLA, P.J.E., MURRAY, J., and KING, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: OCTOBER 8, 2024**

The Commonwealth of Pennsylvania appeals from the order granting the
pre-trial suppression motion filed by Jamal Joel Burrell (Burrell).  After careful
consideration, we affirm.

The suppression court summarized the evidence presented at the
suppression hearing:

> On August 11, 2023, Pennsylvania State Troopers Travis
> Lamereaux and Michael Folcarelli stopped a tan Mazda Protégé
> [(the vehicle)] at approximately [1:00 a.m.] for traffic offenses.
> The stop occurred in the 1500 block of Ritner Highway in
> Southampton Township, Cumberland County, a narrow, rural
> stretch of road.  There were three occupants of the vehicle[: t]he
> driver, Steven Kunkle[ (Mr. Kunkle);] the front right passenger, …
> Burrell[;] and a third person in the backseat.  … [N]one of the
> three occupants had a valid driver's license.
>
> Trooper Folcarelli's body[-worn camera] was operational
> throughout the encounter, though the audio cut[ ]out at the 29-
> minute mark.  Trooper Lamereaux's body[-worn camera footage]
> apparently was not saved.

[Mr. Kunkle] was removed from the car and questioned. Almost immediately[,] the Troopers suspected drug[-]related activity. [Mr. Kunkle] repeatedly denied any involvement in drugs or alcohol. Trooper Folcarelli required the other occupants to provide their names and date[s] of birth so he could check for "valid driver's licenses." He also engaged them in casual conversation and repeatedly inquired about drugs or drug[-]related activity.

For several minutes, Trooper Folcarelli [performed a computer check of the names of all three individuals] through [the National Crime Information Center,] while Trooper Lamereaux continued to engage [Mr. Kunkle]. Trooper Folcarelli then re-engaged [Mr. Kunkle] about drugs and drug[-]related activity. Trooper Folcarelli then asked [Burrell to get] out of the car[,] and questioned him about his whereabouts, drugs, and drug[-]related activity. [Burrell] gave a conflicting account of the night to Trooper Folcarelli. [Burrell] repeatedly denied having any drugs or firearms on his person or in the vehicle. Trooper Folcarelli then engaged in a pat-down of [Burrell].

Trooper Folcarelli then questioned the backseat passenger[,] who seemed very disinterested and was playing chess on his cellphone. He[,] too[,] gave a confusing, conflicting account of the evening.

Trooper Folcarelli then returned to the driver, [and] got a slightly different[,] confusing account of the night. He then asked [Mr. Kunkle] for consent to search the car. [Mr. Kunkle] initially denied consent. At this point in the body[-worn camera footage], the audio cuts out for the rest of the video. Visually, the Trooper is seen running the [vehicle's] registration and calling the station. He then re-engages with [Mr. Kunkle], presumably to talk him into consenting. Trooper Folcarelli was not present at the suppression hearing and did not testify. Trooper Lamereaux was present and did testify. He stated that Trooper Folcarelli re-engaged [Mr. Kunkle], allowed him to speak with his wife, who apparently was the registered owner of the vehicle, and after speaking with his wife, consented to a search of the vehicle. [Mr. Kunkle] was then seen signing a consent form with Trooper Lamereaux. However, the Commonwealth did not introduce the signed consent form[ at the suppression hearing].

[After Mr. Kunkle signed the consent form], all three occupants were moved to the front of the police vehicle while Trooper Lamereaux searched the suspect vehicle. Trooper Lamereaux discovered two zippered bags in the front passenger side of the vehicle. He proceeded to open them and discovered a loaded .22 Heritage Revolver and suspected controlled substances and paraphernalia.

Notably, none of the occupants claimed possession of anything in the vehicle prior to the search…. After the search, [Burrell] … admitted ownership of the items.

Suppression Court Opinion, 3/20/24, at 1-3 (footnotes omitted).

On October 5, 2023, the Commonwealth filed a criminal information charging Burrell with several firearm and drug offenses. On January 12, 2024, Burrell filed an omnibus pre-trial motion (OPTM) to suppress physical evidence. Burrell argued "the Troopers illegally searched [his] belongings [] …, over which he had a reasonable expectation of privacy, without his consent, and subjected the [vehicle's] occupants to an illegally prolonged vehicle stop." OPTM, 1/12/24, ¶ 10. The Commonwealth did not file a response.

The suppression court held an evidentiary hearing on Burrell's motion on March 4, 2024. Following the testimony summarized above, the suppression court heard legal argument. *See* N.T., 3/4/24, at 46-55.

Burrell argued the Troopers unlawfully prolonged the traffic stop without reasonable suspicion of criminal activity. *See id.* at 54-55. Burrell further argued that Mr. Kunkle's consent to search the vehicle 1) was not lawfully obtained, and 2) did not extend to Burrell's closed bag. *See id.* at 47-48, 51.

The Commonwealth argued that Burrell was free to leave at any time, and "could have gotten a ride or walked down the road or into the [adjacent] cornfield." *Id.* at 55. Concerning Burrell's expectation of privacy in the bags he left in the passenger side of the vehicle, the Commonwealth relied on ***Commonwealth v. Moore***, 310 A.3d 802 (Pa. Super. 2024), arguing the Troopers "had no idea [that] just because [the bag was] on the passenger side that it belonged to [Burrell]." *Id.* at 50; ***see also Moore***, 310 A.3d at 807 ("[A] defendant must show that he had a privacy interest in the place invaded or thing seized that society is prepared to recognize as reasonable." (quotation marks and citation omitted)). Significantly, **the Commonwealth did not advance the legal theory of inevitable discovery**.

At the conclusion of the hearing, the suppression court took the matter under advisement. On March 20, 2024, the suppression court issued an opinion and order granting Burrell's motion, and suppressing the evidence seized from the vehicle. The suppression court concluded the Commonwealth failed to satisfy its burden of establishing the Troopers obtained voluntary consent for the search from Mr. Kunkle. **See** Suppression Court Opinion, 3/20/24, at 5. The suppression court observed that Mr. Kunkle "most emphatically denied consent multiple times in multiple ways[,] despite Trooper Folcarelli's best efforts to talk him into" granting consent. **Id.** (footnote omitted). The suppression court continued:

> The evidence illustrates a sequence of events with a rather significant gap in the middle[,][1] starting with an emphatic "no" and ending with the signing of a form. We do not know what was said to [Mr. Kunkle] to talk him into consent because Trooper Folcarelli did not testify – Trooper Lamereaux did. However, Trooper Lamere[]aux does not know why exactly [Mr. Kunkle] signed the consent form, only that he did. Therefore, unfortunately, the only thing in evidence to prove voluntary consent is the signing of the form devoid of any context. We don't know how they got to "yes." Accordingly, the Commonwealth has failed to meet their preponderance of the evidence standard.

*Id.* (footnotes omitted; one footnote added). Having determined that the Commonwealth failed to establish valid consent, the suppression court did not address whether Burrell had a reasonable expectation of privacy in the bags on the passenger seat. *Id.*

The Commonwealth timely appealed.[2] The Commonwealth filed a court-ordered concise statement of errors complained of on appeal. The suppression court filed a statement *in lieu* of opinion, indicating that it would rely on the reasoning it set forth in its March 20, 2024, opinion.

The Commonwealth presents the following issue:

---

[1] Trooper Lamereaux testified the traffic stop lasted "[a]pproximately two hours, maybe a little more." N.T., 3/4/24, at 36.

[2] The Commonwealth's notice of appeal included a separate affidavit certifying that the suppression court's order "substantially handicaps the Commonwealth in the prosecution of this case." Affidavit, 4/12/24; *see also* Pa.R.A.P. 311(d) ("[T]he Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").

Did the [suppression] court err in suppressing evidence seized during the traffic stop that would have inevitably been discovered pursuant to a lawful inventory search of the vehicle?

Commonwealth Brief at 4.

Our standard of review is well settled:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Lyn*, 316 A.3d 1055, 1057 (Pa. Super. 2024) (citation omitted).

Preliminarily, we consider whether the Commonwealth has preserved its sole issue for our review. Burrell argues the Commonwealth waived its inevitable discovery issue by failing to argue that specific legal theory at the suppression hearing. *See* Burrell's Brief at 9. Burrell cites Pa.R.A.P. 302 (relating to requisites for reviewable issues) and case law reciting the general proposition that issues not raised before the lower court may not be raised for the first time on appeal. *See* Burrell's Brief at 9. However, the authority upon which Burrell relies does not address whether the Commonwealth waives a legal theory in opposing the suppression of evidence when it is raised for the first time in its concise statement of errors complained of on appeal.

Upon review, we conclude our decision in **Commonwealth v. Smith**, 304 A.3d 35 (Pa. Super. 2023), is controlling. In **Smith**, parole agent Joel Gross (Agent Gross) received an email from a colleague stating that one of Agent Gross's parolees (Smith) had sold bath salts out of her residence on an unspecified date. **See Smith**, 304 A.3d at 36-37. After receiving authorization from his supervisor, Agent Gross conducted an administrative search of Smith's residence. **See id.** at 37. Agent Gross "found what he considered to be evidence" of "criminal activity[,]" and called Pine Creek Township Police Chief David Winkleman (Chief Winkleman). **Id.** (record citation omitted). Chief Winkleman entered Smith's residence and "documented narcotics and drug paraphernalia for the … preparation of a search warrant." **Id.** (brackets omitted) (quoting Chief Winkleman's suppression testimony). Chief Winkleman thereafter obtained a search warrant, and law enforcement reentered Smith's residence, seized evidence, and arrested Smith for drug offenses. **See id.**

The trial court held a hearing on Smith's suppression motion and directed the parties to brief the issues. **See id.** In its brief, the Commonwealth argued that 1) Agent Gross had reasonable suspicion to conduct an administrative search of Smith's residence, and 2) Chief Winkleman's warrantless entry into Smith's residence "did not offend a recognized expectation of privacy" because Agent Gross already had identified the items Chief Winkleman documented in his walkthrough. **See id.**

The trial court granted Smith's motion and suppressed all physical evidence. *See id.* The Commonwealth filed a motion for reconsideration, arguing, for the first time, that the evidence recovered from Smith's residence would have inevitably been lawfully discovered, as "Chief Winkleman's warrantless search was unnecessary to procure a search warrant." *See id.* at 38. The trial court denied the motion, and the Commonwealth appealed. *See id.* On appeal, the Commonwealth raised, *inter alia*, the inevitable discovery issue. *See id.*

The *Smith* Court concluded that the Commonwealth waived its inevitable discovery claim because "it failed to argue to the suppression court that, if Chief Winkleman performed an unconstitutional search …, the court should nevertheless admit the evidence … under the doctrine of inevitable discovery." *Id.* at 40. In effect, the Commonwealth "conceded the exclusionary rule applied to the evidence if unconstitutionally seized." *Id.* (quotation marks omitted) (citing *Commonwealth v. Skipper*, 277 A.3d 617, 621 (Pa. Super. 2022) ("[t]he Commonwealth waived its claim on appeal because it failed to meet its initial burden and, instead, conceded the expectation of privacy by focusing exclusively on the legality of the police conduct." (citations omitted))).

The *Smith* Court specifically held that,

> after the issuance of an order and opinion granting suppression, the Commonwealth may not offer a new legal theory to oppose suppression in a motion for reconsideration. Such a practice would eviscerate the mandate that the Commonwealth be

prepared to go "forward with the evidence and bear the burden of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H).

*Id.* at 40 (brackets omitted).

Instantly, the Commonwealth elicited testimony that, absent Mr. Kunkle's consent to search the vehicle, the Troopers would have 1) applied for a search warrant, 2) had the vehicle towed, and 3) performed an inventory search. *See* N.T., 3/4/23, at 21-22, 39. Nevertheless, as demonstrated in *Smith*, *supra*, merely laying the foundation for an inevitable discovery argument is insufficient to preserve the claim, where it was not advanced prior to the suppression court's ruling. *See Smith*, 304 A.3d at 40. As the Commonwealth did not argue inevitable discovery prior to the suppression court's ruling, we are constrained to find its sole issue on appeal waived. *See id.*

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/08/2024