J-A30040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TYRONE Q. PEARSALL | : | No. 3240 EDA 2024 |

Appeal from the Order Entered November 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003609-2024

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED MARCH 23, 2026**

The Commonwealth appeals from the order granting the suppression motion of Tyrone Q. Pearsall ("Pearsall").  The Commonwealth's appeal hinges on whether Pearsall had a reasonable expectation of privacy in a black bag placed under the passenger seat—his seat—of the vehicle in which he was traveling.  Because the Commonwealth has failed to show that Pearsall did not have a reasonable expectation of privacy in the bag under his seat—and the Commonwealth has preserved no other basis to justify the warrantless search that resulted in the discovery of the firearm inside the bag—we are constrained to affirm the trial court's order granting suppression.

The trial court provided the following factual and procedural history of this appeal:

[I]n May [] 2024, [Philadelphia Police Officer Tyler Cruz ("Officer Cruz")] observed a vehicle that failed to use a turn signal. Based on this traffic violation, police initiated a traffic stop. Once the vehicle came to a stop, Officer Cruz began running the vehicle's tag. While the tag report was processing, Officer Cruz observed [Pearsall] using his right arm to attempt to reach around the center [console] into the back[]seat. Officer Cruz learned from the tag report that the car was registered to a [Ruoyu] Zhang, the registration was expired, and there were no reports that it was stolen. [The driver of the vehicle indicated she had rented the vehicle using an app. The Commonwealth does not dispute that she was in lawful possession of the vehicle at the time nor that Pearsall was a lawful passenger.]

Officer Cruz and his partner approached the stopped vehicle. Officer Cruz approached [Pearsall] in the passenger seat and asked him for his identification card. Upon being asked for his identification, [Pearsall] began reaching into the backseat again[,] and Officer Cruz told him to stop. [Pearsall] explained that he had dropped his identification under the seat. After this explanation, [Pearsall] opened the car door. Officer Cruz asked him to get back into the vehicle[,] and [Pearsall] complied with the request.

Officer Cruz opened the back passenger door, without permission or consent, and reached his hand under [Pearsall's] seat. Officer Cruz located the dropped identification and closed the car door. Officer Cruz handed [Pearsall's] identification to his partner, while [Officer] Cruz stayed with [Pearsall] and the driver of the vehicle. During this time, the driver explained that she rented the car via an app. During this discussion, [Pearsall] was "just sitting there" and [also] talking with Officer Cruz.

Upon running [Pearsall's] identification, Officer Cruz's partner indicated that [Pearsall] needed to be taken out of the vehicle based on a warrant. Based on this indication, both officers approached the passenger side, while working together to take [Pearsall] out of the vehicle. After getting [him] out of the vehicle, Officer Cruz felt that [Pearsall] had begun "pulling away" upon being removed from the vehicle. Officer Cruz interpreted this pulling as [Pearsall] attempting to run away or otherwise flee. However, [the] officers were able to immediately restrain [Pearsall] and place him in the back of the police car. No other evidence was presented that [Pearsall had] attempted to run away or otherwise flee.

After [Pearsall] was placed in the police car, Officer Cruz went back to the vehicle and began searching under the passenger seat[,] which was the same seat he reached under to get [Pearsall's] identification. Officer Cruz testified that he felt justified in returning to the car because people with warrants do not "ever really try to run." Officer Cruz acknowledged that he returned to the car to search for potential drugs or other contraband, without a warrant.

During this search, Officer Cruz reached under [Pearsall's] seat, which was where he found [Pearsall's] ID. Officer Cruz testified[] that he "pull[ed] a firearm out" from under the seat. However, [Officer] Cruz later acknowledged that he initially just "felt a plastic bag[,]" and only after he "start[ed] pulling and feeling around the bag" did he [ascertain] it was a gun. After this search, the officer let the driver go[] without citation or arrest.

* * * *

[Police] arrested [Pearsall for various firearms offenses]. . . . [Pearsall later] filed a motion to suppress the search[,] arguing that the vehicle search was unlawful [under both the U.S. and Pennsylvania constitutions], and all evidence collected should be [suppressed] as fruit of the poisonous tree.

[I]n October [] 2024, the court held [a] suppression hearing and found that [Pearsall] had a reasonable expectation of privacy in the passenger area of the car, and the police lacked probable cause and exigent circumstances to search the vehicle[] without a warrant[ and after Pearsall] had been placed in custody. . . . [T]he Commonwealth filed a motion to reconsider, which was denied . . .. The Commonwealth filed a timely notice of appeal [in which it certified that the suppression order terminates or substantially handicaps the prosecution, per Pa.R.A.P. 311(d).]

Trial Court Opinion, 2/12/25, at 2-5 (unnecessary capitalization and citations to the record omitted; some brackets in original; some paragraphs re-ordered for clarity). Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

- 3 -

The Commonwealth raises the following issue for our review:

Did the lower court err by suppressing the gun recovered from beneath a seat in a rental car in which [Pearsall] was a passenger, where the evidence established that [he] lacked a reasonable expectation of privacy in the area searched?

Commonwealth's Brief at 4.

The Commonwealth's issue turns on whether the trial court erred in granting Pearsall's suppression motion.

Our well-settled standard of review is as follows:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Rice***, 304 A.3d 1255, 1259–60 (Pa. Super. 2023) (internal citation and indentation omitted).

As noted above, the Commonwealth's appeal centers on whether Pearsall had a reasonable expectation in the bag under his seat. As an initial matter, we note, relevant to automobile searches, that warrantless vehicle searches are generally impermissible under Article I, Section 8 of the Pennsylvania Constitution, absent both probable cause and exigent

- 4 -

circumstances. *See*, *e.g.*, *Commonwealth v. Saunders*, 326 A.3d 888, 903 (Pa. Super. 2024). The Commonwealth does not dispute that Officer Cruz performed a warrantless search without exigent circumstances.

Once a defendant files a motion to suppress, "it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012). In Pennsylvania, a defendant charged with a possessory offense has "automatic standing" to pursue a suppression motion. *Commonwealth v. Enimpah*, 106 A.3d 695, 698 (Pa. 2014). "[A] defendant must show that he had a privacy interest in the place invaded or thing seized that society is prepared to recognize as reasonable." *Id*. "The expectation of privacy is an inquiry into the validity of the search or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated." *Id*. at 699.

In determining whether an individual's expectation of privacy is legitimate or reasonable, we must consider the totality of the circumstances and the determination "ultimately rests upon a balancing of the societal interests involved." *Commonwealth v. Peterson*, 636 A.2d 615, 619 (Pa. 1993). "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding

circumstances." ***Commonwealth v. Burton***, 973 A.2d 428, 435 (Pa. Super. 2009) (*en banc*) (citation omitted).

A person who is authorized to use a vehicle may have a reasonable expectation of privacy in the vehicle. ***Cf***. ***Powell***, 994 A.2d at 1104. Additionally, a reasonable expectation of privacy in a searched vehicle extends not just to the drivers, but also passengers. ***See id***. Additionally, while passengers may maintain a reasonable expectation of privacy in the contents of luggage they placed inside a vehicle, "it would be unreasonable to maintain a subjective expectation of privacy in locations of common access to all occupants." ***Id***. (quoting ***Commonwealth v. Viall***, 890 A.2d 419, 422-23 (Pa. Super. 2005)).

A defendant may relinquish his reasonable expectation of privacy in property by abandoning it, *i.e.*, if that defendant "voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." ***Commonwealth v. Johnson***, 636 A.2d 656, 658 (Pa. Super. 1994) (internal citation omitted) (finding abandonment where the defendant placed a bag in a tree in a public park). The "theory of abandonment is predicated upon the ***clear*** intent of an individual to relinquish control of the property he possesses." ***Commonwealth v. Elverton***, 311

A.3d 592 (Pa. Super. 2023) (unpublished memorandum at *42) (internal citation and quotation omitted; emphasis added).[1]

The Commonwealth argues the trial court erred in granting suppression because Pearsall did not have "any expectation of privacy—much less a reasonable one—in the area in which it was found." Commonwealth's Brief at 12. The Commonwealth asserts Pearsall was merely present in the vehicle as an "ordinary passenger" in a rental car, and he had no reasonable expectation of privacy in the "entire passenger compartment." *Id*. The Commonwealth also suggests that Pearsall abandoned the bag when he attempted unsuccessfully to flee. *See id*. at 13.

The trial court considered the Commonwealth's arguments and found them unpersuasive. Firstly, the trial court concluded the Commonwealth's abandonment argument is a distinct theory that it failed to raise at the suppression hearing, and, accordingly, it is waived. *See* Trial Court Opinion, 2/12/25, at 5-6 (citing *Commonwealth v. Smith*, 304 A.3d 35, 40 (Pa. Super. 2023) for the proposition that the Commonwealth may not offer new legal theories after an order granting suppression).

The court additionally reasoned that while passengers do not have a reasonable expectation of privacy in the entirety of a vehicle, they do have an interest in areas where they are able to keep their effects private. *See id*. at

---

[1] *See* Pa.R.A.P. 126(b) (unpublished memoranda filed after May 1, 2019 citable for their persuasive value).

9. The court determined, based on the totality of the circumstances, that Pearsall had a reasonable expectation of privacy in the area under his seat:

> The proffered evidence presented at the hearing demonstrated the following: [Pearsall] was in the passenger seat of the vehicle at the time of the traffic stop; [he] complied with the officer's requests and answered the officer's questions; the car was not stolen; it was uncontroverted that the driver had rented the car and was allowed to leave with the vehicle; [Pearsall] waited while [the] police ran his ID card; [o]fficers arrested [him] for outstanding warrants; **[he] attempted to "pull away" from officers, but was immediately subdued**; [o]fficers contained [him] and placed him in the back of the police car; Officer Cruz returned to the vehicle to search for drugs or contraband.

Trial Court Opinion, 2/12/25, at 9-10 (emphasis added).

Initially, we conclude the record supports the trial court's finding that the Commonwealth waived its abandonment theory. While there was evidence from which the court could possibly conclude Pearsall **attempted** (unsuccessfully) to flee, the Commonwealth simply pointed to his attempted flight as contributing to probable cause for the search, **not** in support of a theory of abandonment. **See** Commonwealth's Brief at 14 (citing to N.T., 10/11/24, at 19-20 (Officer Cruz's testimony), 34-35 (argument regarding probable cause)); **accord Commonwealth v. Sumpter**, 292 A.3d 1092 (Pa. Super. 2023) (unpublished memorandum at *3 n.4) (finding waiver of an abandonment theory where the Commonwealth had not argued it, but had

- 8 -

instead argued based on other factors that the defendant did not have a legitimate expectation of privacy in the vehicle).[2]

Next, we conclude the record supports the trial court's conclusion that Pearsall had a reasonable expectation of privacy in the area under his seat. We find our decision in *Commonwealth v. Cruz*, 324 A.3d 1203 (Pa. Super. 2024) (unpublished memorandum), persuasive. In *Cruz*, officers initiated a traffic stop for a "tag cover violation" and discovered the driver was lawfully using the car as a cab. 324 A.3d 1203 (unpublished memorandum at *1). There were two men in the back seat, Cruz and another man named Roundtree. Roundtree appeared nervous; Cruz did not. *See id*. Cruz presented what appeared to be a fake ID, after which officers frisked the vehicle's occupants and performed a protective search during which they found a "Christmas-style" gift bag on the floor of the back seat between where Cruz and Roundtree were sitting. *See id*. An officer "initially stated that he looked inside the gift bag and saw twenty racks of heroin," and later clarified that inside the gift bag was another bag, a "white plastic bag that was knotted at the top," that the officer opened. *Id*. After peeling back the paper of the

_____

[2] We also observe the Commonwealth has provided no authority for its assertion that attempted, and unsuccessful, flight evinces a clear intent to relinquish the defendant's property rights. Additionally, we note that officers arrested Pearsall for *resisting arrest*, not flight. *See* Criminal Complaint at 1.

drug packaging, he discovered the bag contained heroin, after which officers arrested Cruz and charged him with several offenses, including PWID.

Cruz moved for suppression, and the trial court granted it. The court concluded, in relevant part, that Cruz had a reasonable expectation of privacy in the closed bag on the floor at his feet. *See id*. at *2. The Commonwealth appealed, and this Court affirmed. This Court explained: "[P]olice did not recover drugs that were sitting out in the open in the backseat of the car; rather [they] recovered the drugs from a tied-off plastic bag that was inside a Christmas gift bag, which was situated at Cruz's feet," and, accordingly, the record supported the trial court's finding that "Cruz intended to keep the contents of the plastic bag, which was tied off and sitting inside a Christmas-style gift bag, private," and thus had a reasonable expectation of privacy. *See id*. at *5.

Here, similar to *Cruz*, Pearsall was a lawful passenger inside of the vehicle, which in this case was rented by the driver, and, accordingly, while he did not have a reasonable expectation of privacy in the entire vehicle, he had a reasonable expectation of privacy in the bag he placed inside the vehicle. The following facts support the trial court's finding that Pearsall had a reasonable expectation of privacy in the bag: he was in the passenger seat of the vehicle, and was observed reaching around the center console behind the seat he was occupying; and his identification was located under the seat where the black plastic bag was located. The fact that the bag was *under* the

seat Pearsall occupied where his identification was located, rather than out in the open and accessible to any and all occupants of the vehicle, indicates that Pearsall intended to keep the contents of the bag private, and, accordingly, he had a reasonable expectation of privacy in the area under his seat including the bag. *See* Trial Court Opinion, 2/17/25, at 12 (concluding Pearsall "clearly did have a privacy interest in his bag that he placed under his seat near his identification card," and that he had a legitimate expectation of privacy); *Cruz*, 324 A.3d 1203 at *5-*6; *accord Commonwealth v. Rivera*, 273 A.3d 1032 (Pa. Super. 2022) (unpublished memorandum at *5) (providing that a passenger in a vehicle maintains a reasonable expectation of privacy in luggage that "he or she places inside a vehicle provided, however, that the passenger, by his or her conduct, exhibits an actual or subjective expectation of privacy in the backpack as determined by the totality of the circumstances and that expectation is one that society is prepared to recognize as reasonable") (footnote omitted).[3] As such, the trial court's findings are supported by the record and its legal conclusions appropriate. Thus we affirm the trial court's order granting suppression.

Order affirmed.

---

[3] Additionally, the contraband nature of the contents of the bag was not immediately apparent to Officer Cruz, who testified, "I felt the plastic bag, and there was some weight to it. **As I start pulling and feeling around the bag**, I felt a firearm." N.T., 10/11/24, at 31 (emphasis added).

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>03/23/2026</u>