J-A28001-23

2024 PA Super 25

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN OMAR MOORE | : | No. 2510 EDA 2022 |

Appeal from the Order Entered August 31, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001996-2021

BEFORE: OLSON, J., STABILE, J., and COLINS, J.[*]

OPINION BY OLSON, J.: **FILED FEBRUARY 13, 2024**

The Commonwealth of Pennsylvania appeals from the order entered on August 31, 2022, which granted the suppression motion filed by the defendant, Jonathan Omar Moore ("the Defendant"). We vacate and remand.

On May 13, 2020, the Defendant was arrested and charged with a number of crimes, including possessing a controlled substance with the intent to deliver ("PWID") and criminal conspiracy.[1] The Defendant then filed a pre-trial motion, where he sought to suppress all evidence against him. ***See*** The Defendant's Pre-Trial Motion, 12/17/21, at 1-4.

On July 22, 2022, the trial court held a suppression hearing. The trial court ably summarized the evidence it heard during the hearing:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 903, respectively.

On May 13, 2020 at approximately 8:30 a.m. Trooper James Nolan of the Pennsylvania State Police was in his fully marked patrol vehicle observing southbound traffic on Interstate 95 in Tinicum Township, Pennsylvania. At the time and place in question, the trooper observed a black Infinity G35 with heavily tinted windows bearing a Virginia license plate and began to follow same. The trooper clocked the vehicle in question at 70 m.p.h. for [0.3] miles with his calibrated police vehicle which was also equipped with a motor vehicle recorder [("MVR")]. The speed limit in this area on Interstate 95 is 55 [miles per hour.]

The trooper testified that although through training and experience it was his belief that a lot of people from out of state come to Philadelphia to obtain large quantities of drugs and take them back to their respective cities he did not know whether this vehicle had actually stopped in Philadelphia or not. After the vehicle in question was stopped Trooper Nolan exited his patrol car and approached [the Defendant's] vehicle from the passenger side during which time he observed "[a] lot of movement within the vehicle. It looked like people were moving around of [*sic*] the vehicle and the car was bouncing back and forth as if they switched seats." The [trooper] testified that such movement was unusual in his experience.

During the suppression hearing, the tape of the [MVR] in Trooper Nolan's vehicle was placed into evidence without objection. All counsel agreed that the court could review the MVR in its entirety at a later date in chambers. The court did, in fact, conduct such review in chambers.

The review revealed that as the Trooper approached [the Defendant's] vehicle after it [had] been pulled over there was some perceptible movement [in] the vehicle consistent with a person or persons moving around within the interior of said vehicle.

When asked about the movement inside the car, [the Defendant's co-defendant, Cordell Livingston ("Mr. Livingston"), who was then in the passenger's seat,] told Trooper Nolan that [he and the Defendant] had switched seats. Upon his initial approach the passenger window was cracked about [four] inches and the trooper immediately

smelled a very large odor of marijuana and air fresheners such as cologne along with little trees hanging on the floorboard which Trooper Nolan felt was indicative of a criminal element within the vehicle.

[The Defendant and Mr. Livingston] produced their driver's licenses upon request. [Mr. Livingston's] license was suspended, however, [the Defendant's] license was valid. The vehicle's registration came back to Sharon Horton. Neither occupant provided any information about Ms. Horton and the vehicle had not been reported stolen. The trooper [did not] recall ever asking the occupants what their relationship may have been to the owner [of the vehicle]. When asked why that issue was not raised, the trooper stated that he made the decision to conduct a probable cause search of the vehicle as soon as he smelled the marijuana.

Although Trooper Nolan told the court he smelled the odor of burnt marijuana he had earlier told defense counsel that he could not recall if the smell was from fresh marijuana or not. Trooper Nolan was told that the occupants had changed seats in the vehicle, although there is no indication in the record that the trooper interrogated the passengers as to the reason for the switch or that either occupant volunteered such information.

Neither of the occupants of the vehicle consented to a search of the car and Trooper Nolan conceded that there was nothing precluding him or his fellow officer from obtaining a search warrant for the vehicle in question.

. . .

When asked by the [trial court] why the ownership issue was not pursued, Trooper Nolan [testified]:

I think at that point, again, pre-**Alexander**,[2] I knew that I was going to search the vehicle anyway . . . I kind of was just trying to get straight to the point.

_____

[2] The Pennsylvania Supreme Court decided **Commonwealth v. Alexander** in December 2020. In **Alexander**, the Supreme Court overruled prior

*(Footnote Continued Next Page)*

[As Trooper Nolan testified: "in the rear seat of the vehicle, I noticed the armrest was down, which then has a little lever door that you can gain entry to the trunk. I opened that [little lever] door, and there were two pounds of marijuana vacuum-sealed sitting right there."]

Trial Court Opinion, 1/5/23, at 3-5 (citations omitted).

On August 31, 2022, the trial court granted the Defendant's motion and suppressed all evidence against the Defendant. **See** Trial Court Order, 8/31/22, at 1-6. Regarding the Commonwealth's claim that the Defendant failed to demonstrate an expectation of privacy in the vehicle, the trial court declared: "[i]n the instant matter the Commonwealth failed to establish [the Defendant's] lack of privacy interest. Accordingly, the burden never shifted to the [Defendant] and the Commonwealth's argument must fail." Trial Court Statement of Facts, 8/31/22, at 5.

The Commonwealth filed a timely notice of appeal and, within its notice, the Commonwealth properly certified that the trial court's order "will terminate or substantially handicap the prosecution." Commonwealth's Notice of Appeal, 9/29/22, at 1; **see also** Pa.R.Crim.P. 311(d). The Commonwealth raises one claim to this Court:

> Did the lower court err in granting [the Defendant's] motion to suppress where: (1) the evidence that [the Defendant]

---

precedent and held that, under Article I, Section 8 of the Pennsylvania Constitution, "warrantless vehicle searches require both probable cause and exigent circumstances; one without the other is insufficient." **Commonwealth v. Alexander**, 243 A.3d 177, 207 (Pa. 2020) (quotation marks and citations omitted).

had been driving an out-of-state car registered to someone else was sufficient to meet the Commonwealth's initial burden of production; and (2) [the Defendant] did not even attempt to establish a reasonable expectation of privacy in the car?

Commonwealth's Brief at 4.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047–1048 (Pa. Super. 2012) (*en banc*); ***see also*** Pa.R.Crim.P. 581(H). If the defendant prevails in the underlying proceeding, "[w]e review a trial court's order suppressing evidence for an abuse of discretion and our scope of review consists of only the evidence from the defendant's witnesses [during the suppression hearing,] along with the Commonwealth's evidence that remains uncontroverted." ***Commonwealth v. Miller***, 186 A.3d 448, 450 (Pa. Super. 2018) (quotation marks and citations omitted). "Where the [trial] court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court's legal conclusions are erroneous." ***Commonwealth v. Palmer***, 145 A.3d 170, 173 (Pa. Super. 2016) (quotation marks and citations omitted). Relatedly, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006) (quotation marks and citations omitted). However, "we maintain *de novo* review over the suppression court's legal conclusions."

*Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa. Super. 2016) (quotation marks and citations omitted).

"Generally, to have standing to pursue a suppression motion under Pa.R.Crim.P. 581, the defendant's own constitutional rights must have been infringed." *Commonwealth v. Enimpah*, 106 A.3d 695, 698 (Pa. 2014). "However, it is well settled that a defendant charged with a possessory offense in this Commonwealth has 'automatic standing' because the charge itself alleges an interest sufficient to support a claim under Article I, § 8." *Id.* (brackets and some quotation marks and citations omitted). "This rule entitles a defendant to a review of the merits of his suppression motion without a preliminary showing of ownership or possession in the premises or items seized." *Id.*

In order to prevail on a suppression motion, however, "a defendant must show that he had a privacy interest in the place invaded or thing seized that society is prepared to recognize as reasonable." *Id.* at 699. "The expectation of privacy is an inquiry into the validity of the search or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated." *Id.*

Although "the defendant bears the burden of persuasion with respect to his privacy interest," the Commonwealth bears the initial burden of production "to present evidence that the defendant's constitutional rights were not infringed." *Id.* at 701. Thus, in cases where the Commonwealth contests the defendant's expectation of privacy in an object or an area, the Commonwealth

bears the initial burden of coming forward with sufficient evidence "show[ing that] the defendant lacked such a privacy interest." *Id.* If the Commonwealth satisfies this initial burden, "it need do no more, absent proof to the contrary from the accused himself." *Id.* at 703. At this point, the burden is shifted to the defendant, to "show[ that] such an expectation [of privacy] did exist." *Id.* at 701. Where "the Commonwealth's evidence show[s] the defendant lacked any protected privacy interest," and the evidence favorable to the defendant does not effectively rebut the Commonwealth's evidence, the defendant's suppression motion must be denied, as "a defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests."[3] *Id.* at 700 and 701 (quotation marks omitted).

"An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and [] the subjective expectation is one that society is prepared to recognize as reasonable." ***Commonwealth v. Brundidge***, 620 A.2d 1115, 1118 (Pa.

---

[3] In ***Enimpah***, our Supreme Court clarified:

> Although the defendant will typically present his own evidence to satisfy this burden, he is not required to do so. Indeed, he may succeed without presenting any evidence at all. *See* 6 Wayne R. LaFave, Search & Seizure § 11.2(b), at 50 (5th ed. 2012) (noting "even if the burden of proof is on one party, it may happen that the burden is actually met in a particular case by evidence given by the other party").

***Enimpah***, 106 A.3d at 702 n.6.

1993). "In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved." *Commonwealth v. Viall*, 890 A.2d 419, 422 (Pa. Super. 2005). "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances." *Id.* (quotation marks and citations omitted).

On appeal, the Commonwealth claims the trial court erred when it determined the Commonwealth failed to carry its initial burden of demonstrating that the Defendant lacked a reasonable expectation of privacy in the vehicle. The Commonwealth further argues that, since the trial court found, as a fact, that the vehicle was registered to a third-party named Sharon Horton, the burden shifted to the Defendant and required the Defendant to prove that he had a privacy interest in the vehicle. According to the Commonwealth, since there was no evidence presented at the suppression hearing tending to show that the Defendant had an expectation of privacy in the vehicle, the trial court erred when it granted the Defendant's motion to suppress. *See* Commonwealth's Brief at 10-11. We agree with the Commonwealth.

Following the suppression hearing, the trial court found, as a fact, that: the Defendant was a passenger in the vehicle; the vehicle was being driven by Mr. Livingston, in Pennsylvania, and Mr. Livingston did not have a license

- 8 -

to operate the vehicle; the vehicle had a Virginia license plate; the vehicle was registered to a third-party named Sharon Horton; and, "[n]either [the Defendant nor Mr. Livingston] provided any information about Ms. Horton" during the traffic stop or the suppression hearing. *See* Trial Court's Statement of Facts, 8/31/22, at 1-4. Under our precedent, the trial court's factual findings prove that the Commonwealth carried its initial burden of coming forward with sufficient evidence "show[ing that] the [D]efendant lacked [] a privacy interest" in the vehicle. *See Commonwealth v. Jones*, 874 A.2d 108, 120 (Pa. Super. 2005) (holding: the appellant did not possess a reasonable expectation of privacy in a vehicle where: "he was the operator of a rental car but not the named lessee, was not an authorized driver, the named lessee was not present in the vehicle, [a]ppellant offered no explanation of his connection to the named lessee, and the return date for the rental car had passed");[4] *Commonwealth v. Burton*, 973 A.2d 428, 436 (Pa. Super. 2009) (*en banc*) (holding that the defendant did not have an expectation of privacy in a vehicle, where he did not own the vehicle and where he "offered no evidence to explain his connection to the vehicle or his connection to the registered owner of the vehicle"); *Commonwealth v. Cruz*, 21 A.3d 1247, 1251–1252 (Pa. Super. 2011) (holding that the defendant did

---

[4] *Compare with Byrd v. United States*, 584 U.S. 395 (2018) (holding that "**someone in otherwise lawful possession and control of a rental car** has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver") (emphasis added).

not demonstrate he had an expectation of privacy in the vehicle he was driving at the time of the stop because the defendant "presented no evidence that he owned the vehicle, that it was registered in his name, or that he was using it with the permission of the registered owner"); **Commonwealth v. Maldonado**, 14 A.3d 907 (Pa. Super. 2011) (holding: where the Commonwealth presented evidence at the suppression hearing establishing that the vehicle the defendant was driving was owned by his girlfriend, the burden then shifted to the defendant to establish an expectation of privacy in the vehicle; however, since there was "no evidence that [the defendant] had permission from [his girlfriend] to drive the car," the defendant "failed to establish an expectation of privacy in the vehicle he was driving"); **see also Commonwealth v. Peak**, 230 A.3d 1220, 1224 (Pa. Super. 2020) ("a driver who does not own a vehicle may still establish an expectation of privacy in the vehicle **if he can prove he has permission or authority from the owner to drive the vehicle**") (emphasis added).

Since the Commonwealth came forward with evidence tending to show that neither the Defendant nor Mr. Livingston were the registered owners of the vehicle, the burden shifted to the Defendant to prove that he had a privacy interest in the vehicle. However, neither the Defendant nor Mr. Livingston presented any evidence during the suppression hearing. Further, no evidence was presented during the hearing that would support a conclusion that the Defendant had an expectation of privacy in the vehicle, which "he did not own, that was not registered to him, and for which he has not shown authority to

operate." **Burton**, 973 A.2d at 436; **see also Commonwealth v. Powell**, 994 A.2d 1096, 1107 (Pa. Super. 2010) (holding that the defendant, who was a passenger in a vehicle, did not have an expectation of privacy in the trunk of the vehicle, where the vehicle "was registered to a third person, [another person] was operating [the vehicle], and [the defendant] had no connection to the vehicle whatsoever"). Therefore, we must vacate the trial court's order granting the Defendant's motion to suppress. **See Enimpah**, 106 A.3d 699 ("if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated").

Order vacated. Case remanded. Application for consolidation denied. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/13/2024