J-S15029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAUN M. LONG | : | |
| | : | |
| Appellant | : | No. 1459 WDA 2023 |

Appeal from the PCRA Order Entered November 9, 2023
In the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000755-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAUN M. LONG | : | |
| | : | |
| Appellant | : | No. 419 WDA 2024 |

Appeal from the PCRA Order Entered November 9, 2023
In the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000288-2018

BEFORE: OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED: OCTOBER 17, 2025**

Shaun M. Long ("Long") appeals from the dismissal of his first petition pursuant to the Post Conviction Relief Act ("PCRA").[1] Additionally, Long has sent—following the filing of a merits brief by PCRA appellate counsel, Tina

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 42 Pa.C.S.A. §§ 9541–9546.

Fryling, Esq. ("Attorney Fryling")—*pro se* correspondence to this Court asserting the ineffectiveness of Attorney Fryling.[2] Following our review, we conclude the record supports the PCRA court's dismissal order based on its conclusion that Long's claims merit no relief. Accordingly, we affirm the order dismissing Long's PCRA petition. Further, were we to consider Long's *pro se* correspondence, insofar as he seeks a remand to the PCRA court, it is untimely, and to the extent he asserts ineffectiveness claims against Attorney Fryling, it is meritless.

The relevant factual and procedural history of this case is as follows. At docket CR-755-2017, Long was convicted of possession of a controlled substance, and possession with intent to use drug paraphernalia. At docket CR-288-2018, Long was convicted of drug delivery resulting in death ("DDRD"), hindering apprehension/prosecution by concealing or destroying evidence, hindering apprehension/prosecution, delivery of a controlled substance, involuntary manslaughter, abuse of corpse, false reports,

_____

[2] Upon receipt of Long's *pro se* correspondence, this Court forwarded it to Attorney Fryling pursuant to **Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011). Attorney Fryling has, to date, taken no action on this correspondence. However, as discussed further below, we acknowledge that pursuant to **Commonwealth v. Bradley**, "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel **or acting pro se**, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." 261 A.3d 381, 402 (Pa. 2021) (emphasis added).

tampering with or fabricating physical evidence, and obstructing the administration of law or other governmental function.

Long's convictions arise from his delivery of fentanyl to Kayla Dunlap ("Dunlap," or alternatively, "the victim") who consequently died from an overdose. More specifically, on September 17, 2017, a woman walking her dogs in the morning hours found Dunlap's body lying by the side of a dirt road next to the Oneida Valley Dam just north of Butler. *See* N.T. 1/13/20, at 41. After the woman called 911, state troopers arrived and began investigating the scene. *See id*. at 42. Justin Barger ("Barger"), a friend of Dunlap, later testified at trial that on the Friday preceding the discovery of Dunlap's body, *i.e.*, on September 15, 2017, he had dropped Dunlap off at Long's residence, a trailer in the woods. *See id*. at 74, 79-80.

Grace O'Day ("O'Day") was Long's roommate in 2016 and 2017 and would take methamphetamine ("meth") and fentanyl she received from Long. *See* N.T., 1/14/20, at 213-14. O'Day and Dunlap had begun and ended a relationship together in 2016, though they remained "good friends" after the end of the relationship. *Id*. at 214. According to O'Day, Dunlap also was a drug-user and would use, *inter alia*, heroin and meth. *See id*. at 215. On the night Barger transported O'Day to Long's residence, Long "chased" Barger away, and followed Barger and Dunlap to the gas station/convenience store Co-Go's, after which Dunlap returned to Long's home with Long. *Id*. at 216. Later, O'Day, Dunlap, and Long were in Long's residence when Dunlap told

O'Day she had received fentanyl from Long. *See id*. at 217-18.[3] O'Day, Dunlap, and Long all shot up together. *See id*. at 218-19. O'Day used six stamp bags at a time and instructed Dunlap to use half a stamp bag. O'Day prepared the dugs for Dunlap by pouring half a stamp bag out onto a spoon, putting water in it, and pulling it into a syringe. *See id*. at 220. Dunlap injected the drugs into her ankle. *See id*. Dunlap nearly lost consciousness, but then O'Day picked her up and got her to walk around some, after which both went to sleep on a couch in Long's residence, while Long slept on another couch. *See id*. at 221.

O'Day and Dunlap awoke the next morning, Saturday, and they each prepared their drugs, after which they injected themselves, and, according to O'Day, Dunlap "went down, and I shortly after went out when she did." *Id*. at 222. Long was there at the time with a third party named Mike Adams. *See id*. O'Day was unsure of the amount Dunlap shot up. *See id*. at 223. After about an hour or two of being unconscious, O'Day was awoken by Long.

_____

[3] Carfentanyl is a synthetic opioid analog of fentanyl. *See* David Evans, *Fentanyl and drug testing*, 1 Drug Testing Law Tech. & Prac. § 4:269 (2024). O'Day referred interchangeably to "fentanyl" and "carfentanyl" in her testimony. She later explained that she believed it was carfentanyl that Long had provided, which she believed was more potent than fentanyl, because Long told her the drugs he provided to her and Dunlap were carfentanyl. *See* N.T., 1/14/20, at 253-54. However, O'Day later stated she had been using fentanyl the first night with Dunlap and Long. *See id*. at 255-56. For consistency and because there is no dispute that fentanyl was found in Dunlap's body, and this was a substantial factor in causing her death, we refer to fentanyl throughout this memorandum.

Long told her to get Dunlap "up and out," after which O'Day went to wake Dunlap up and noticed she had peed her pants. *Id*. at 224. O'Day wanted to call 911, but Long prevented her by taking her phone because, he said, he could go to jail. *See id*. at 224, 225. O'Day then gave Dunlap Narcan, but it did not work. *See id*. Dunlap was not breathing at the time O'Day tried to administer Narcan. *See id*. at 225.

Long then exited the trailer and padlocked O'Day and Dunlap inside. *See id*. O'Day remained in the trailer with Dunlap's body until nighttime, during some of which time, O'Day "got really high and tried to forget about what happened" because she felt like she was in a state of "shock and panic." *Id*. at 226. Later, Long returned and dragged Dunlap's body out to his vehicle, registered in his daughter's name, a white Chevrolet Equinox. *See id*. at 227. While O'Day refused to help, she accompanied Long to a reservoir in Butler, where Long left Dunlap's body on a back road. *See id*. at 228. After that, Long burned the sheets at his trailer and sold, and imbibed with O'Day, more drugs. *See id*. The following day, Sunday, O'Day packed up and went home. When she later spoke to police, she lied to them on two occasions, pursuant to directions from Long that she should tell officers Dunlap "just walked away, that she left and we didn't see her again." *Id*. at 230.

In sum: Long delivered fentanyl to Dunlap when she was at his trailer on September 16, 2017, the day before Dunlap's body was discovered. *See* N.T., 1/14/20, at 217. O'Day further testified that Long was present after the

- 5 -

overdose that led to Dunlap's death, and that he: prohibited O'Day from calling 911 for medical assistance after Dunlap had overdosed; locked O'Day in the trailer with Dunlap's body; later dragged Dunlap's body into the Equinox; drove to the location where Dunlap's body was later found; disposed of Dunlap's body at that location; and later burned the sheets that were in the trunk of the car with Dunlap's body and one of Dunlap's flip-flops that had been left at Long's trailer. *See id*. at 224-28.

Additional evidence linked Long to Dunlap's death and the disposal of her body. Regarding Long's vehicle, the Equinox, Pennsylvania State Police ("PSP") Trooper Brian Knirnschild ("Trooper Knirnschild") testified that he had seen the Equinox in Long's driveway on September 18, the day after Dunlap's body was discovered, and that surveillance camera footage from the Co-Go's station captured Long exiting that Equinox in the early hours of September 16, 2017. *See* N.T. 1/13/20, at 91, 99, 100, 108. Additionally, PSP Corporal Christopher Balcik ("Corporal Balcik") testified that DNA samples taken from the carpet of the Equinox's trunk contained DNA from Long and Dunlap. *See* N.T., 1/14/20, at 44.[4]

---

[4] Troopers first interviewed Long on September 18 at his residence. *See* N.T., 1/14/20, at 90. In this interview, Long told the troopers that Dunlap had been at his trailer on the night of September 16, but had left by the time Long had returned from a trip to the store on the morning of September 17. *See id*. at 95. Long said that was the last time he had seen Dunlap. *See id*. at 96.

Officers later obtained a search warrant for Long's cell phone, which they executed on October 3, 2017. *See id*. at 18. During this time, officers knocked and called out to Long, but he was asleep and did not respond to the officers' calls, so they entered and woke him. *See id*. at 19.[5] Corporal Balcik observed that while Long was sleeping on the couch, "we could see that his cellphone was sitting plugged in and resting on the top portion of the couch." *Id*. During a subsequent conversation that day, Long related to Corporal Balcik that his phone was important to him, he carries it all the time, does not let anybody borrow it, and it was his device. *See id*. at 20. Corporal Balcik secured the phone taken from Long and submitted it to the Computer Crimes Unit for analysis, which revealed inculpatory text messages. *See id*. at 48. For example, Long communicated to an associate—who had asked how Long had gotten "involved in this indiscretion with [a] dead body[,] bro[,] that's not a good thing to be a suspect with"—that he, Long, "didn't kill [Dunlap; she] overdosed herself. . ..  And . . . it's possible I know more than I'll ever say to anyone but my dog.  It's a sad, sad effect of life on the dark side." *Id*. at 57. Other messages evinced that Long used the phone, such as messages between him and his daughter. *See id*. at 53-54 (indicating a message from Long's daughter asking him, "You get a new phone or something there Dad?"

_____

[5] While present in Long's trailer, Trooper Knirnschild observed indicia of drugs, including a mirror with apparent drug residue and applied for a warrant to search the trailer. *See* N.T., 1/13/20, at 119.

after which he replied, "I did a factory reset."). Other messages indicated Long was a drug-dealer, including his text message to another person that he, Long, did not "have any white [f]entanyl in stock." *Id*. at 76. Additionally, Corporal Balcik testified that Long's cell phone records placed him, around 11:11 p.m. on September 16, 2017, around the location where Dunlap's body would be discovered the next day. *See id*. at 15.

Leon Rozin, M.D., J.D. ("Dr. Rozin"), a Commonwealth expert, testified that fentanyl was found in Dunlap's blood at seventy-six nanograms per milliliter, which is twenty-five times the minimal lethal dose, meaning that fentanyl could kill at as low as three nanograms per milliliter. *See* N.T., 1/14/20, at 165. Dr. Rozin opined that fentanyl was a substantial factor in causing Dunlap's death. *See id*. at 169. Additionally, defense expert Todd Luckasevic, D.O. ("Dr. Luckasevic") testified and agreed that the fentanyl Dunlap used "was enough and was in this case . . . a significant factor and causation in [Dunlap's] death[.]" N.T., 1/15/20, at 26.

At the conclusion of Long's trial, the jury convicted him of the afore-mentioned offenses. Long appealed, and this Court affirmed his judgment of sentence in November 2021. *See Commonwealth v. Long*, 268 A.3d 398 (Pa. Super. 2021) (unpublished memorandum). Long took no further appeal but instead filed a timely *pro se* PCRA petition in November 2022. The PCRA court appointed first PCRA counsel ("PCRA counsel") who filed a

***Turner*/*Finley*** letter and petitioned to withdraw,[6] which the court granted. Ultimately the PCRA court dismissed Long's petition without an evidentiary hearing. Long timely appealed, after which the PCRA court appointed Attorney Fryling. ***See*** Order, 1/30/24.[7] Both Long and the PCRA court complied with Pa.R.A.P. 1925.[8]

---

[6] ***See Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[7] This matter has something of a complicated procedural history following the PCRA court's denial of relief. We note the court's order denying relief is dated November 8, 2023, but docketed November 9, 2023. ***See*** Order, 11/9/23. Long had thirty days in which to file an appeal. The thirtieth day fell on December 9, 2023, which was a Saturday; accordingly, the deadline for filing an appeal was Monday December 11, 2023. ***See*** 1 Pa.C.S.A. § 1908 (excluding, *inter alia*, weekends from time computations). Long dated his *pro se* notice of appeal December 11, 2023, the envelope of which is post-marked December 12, 2023, though it was not docketed until December 14, 2023. ***See*** Notice of Appeal, 12/14/23. Accordingly, it is reasonable to infer that Long delivered the notice of appeal to prison officials on December 11, 2023, and, accordingly, Long's notice of appeal was timely. ***See Commonwealth v. DiClaudio***, 210 A.3d 1070, 1074 (Pa. Super. 2019) (applying the prisoner mailbox rule). Due to uncertainty about the status of Long's representation, this Court directed the PCRA court to hold a hearing to resolve the issue, ***see*** Order, No. 1459 WDA 2023, 1/9/24, after which the PCRA court appointed Attorney Fryling. ***See*** Order, 1/30/24, at 3 (order styled as a letter to the Superior Court Prothonotary detailing the procedural history of the case, including the appointment of Attorney Fryling in response to this Court's January 9, 2024 order).

[8] We note that the appointment of Attorney Fryling was improper. The PCRA court appears to be under the misapprehension that after appointed PCRA counsel files a ***Turner*/*Finley*** letter and is granted leave to withdraw, the petitioner is entitled to counsel for an appeal. ***See*** Order, 11/9/23, at 2 (stating, "If [Long] files an appeal of this [o]rder[,] he is entitled to the appointment of counsel as this is his first PCRA [p]etition"). That is incorrect. The appointment of PCRA counsel, who then files a ***Turner*/*Finley*** letter,
*(Footnote Continued Next Page)*

Long raises the following issues for our review:

[1.] [] Long maintains that trial counsel was ineffective in failing to appeal the sufficiency of the [DDRD] conviction when there was no evidence that fentanyl actually killed the victim, and when other drugs were found in the victim's system, and that there was no evidence that [] Long's conduct was a direct and substantial factor in producing the death, since he maintains that other individuals present had drugs, prescriptions for fentanyl, and prescriptions for methadone and that evidence at trial supported the fact that another individual injected drugs into the victim's system.

[2.] [] Long maintains that trial counsel was ineffective in failing to object to phone records entered into evidence at trial . . ., when they were not his records but were those of a third party named Cindy Dallas [("Dallas")].

[3.] [] Long maintains that his trial counsel was ineffective when he failed to call [] Dallas and Anthony Knight [("Knight")], who would have called into question who owned and sent text messages from the cell phone in question ([] Dallas'[s] proffered testimony) and who was responsible for injecting any fatal drugs into the victim.

Long's Br. at 2-3.

Our standard of review of an order dismissing a PCRA petition is well-settled:

_____

vindicates a petitioner's right to counsel, absent specific reasons that PCRA counsel's withdrawal was improper or that counsel was ineffective. **See Commonwealth v. Gibson**, 318 A.3d 927, 933 (Pa. Super. 2024). That is, where the right to counsel has been "fully vindicated by counsel being permitted to withdraw under the procedure authorized in **Turner/Finley**, **new counsel shall not be appointed** and the petitioner, or appellant, must thereafter look to his or her own resources for whatever further proceedings there might be." **Id**. (internal citation and brackets omitted; emphasis added).

- 10 -

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." *Id*. at 145 (internal citation omitted).

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. *See* 42 Pa.C.S.A § 9543(a)(2)(ii); *see also Commonwealth v. Benner*, 147 A.3d 915, 919–20 (Pa. Super. 2016). Generally, to prevail on an ineffectiveness claim, the petitioner has the burden to prove: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance."

***Benner***, 147 A.3d at 920 (internal citations and quotations omitted).[9]  The failure to satisfy any of these prongs is fatal to a petitioner's claim.  ***See id***.  Additionally, counsel is presumed effective.  ***See id***.

In Long's first issue, he argues trial counsel was ineffective for failing to raise on appeal the sufficiency of the evidence for the DDRD conviction.  We begin by noting that the three-prong ineffectiveness test discussed ***supra*** applies to assertions of ineffectiveness in connection with a direct appeal.  ***See***, ***e.g.***, ***Commonwealth v. Blakeney***, 108 A.3d 739, 749-50 (Pa. 2014).  As for appellate counsel specifically,

> [w]ith regard to "reasonable basis" in the appellate context, it is well settled that appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of issues he believes pose a greater likelihood of success.

***Id***. at 750 (internal citations, quotations, and brackets omitted).  Regarding prejudice, the PCRA petitioner must show that "there is a reasonable

---

[9] Regarding "arguable merit," this Court has provided that, "[t]he first inquiry in an ineffectiveness claim is always whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim." ***Commonwealth v. Lott***, 581 A.2d 612, 614 (Pa. Super. 1990) (internal citation and quotations omitted).  For the "reasonable basis" prong, the petitioner must show that counsel "had no reasonable basis designed to effectuate his client's interests." ***Id***. (internal citation and quotations omitted).  Lastly, to establish prejudice, the petitioner "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." ***Commonwealth v. Brown***, 161 A.3d 960, 965 (Pa. Super. 2017) (internal citation omitted).

probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance." *See id*. *Accord Commonwealth v. Koehler*, 36 A.3d 121, 142 (Pa. 2012) (noting that, to succeed on a claim of ineffectiveness vis-à-vis appellate counsel, a petitioner must show that counsel's asserted ineffectiveness affected the outcome of the appeal). That is, appellate counsel cannot be ineffective for failing to raise a meritless claim. *See*, *e.g.*, *Commonwealth v. Rivera*, 199 A.3d 365, 384 (Pa. 2018); *accord Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) ("Counsel cannot be deemed ineffective for failing to pursue a meritless claim.").

Regarding the sufficiency of the evidence, we note:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.

*Commonwealth v. James*, 297 A.3d 755, 764 (Pa. Super. 2023) (internal citations, quotations, and indentation omitted).

The law regarding DDRD is as follows. A person commits DDRD where he "intentionally administers, dispenses, delivers, gives, prescribes, sells or

distributes any controlled substance . . ., and another person dies as a result of using the substance." 18 Pa.C.S.A. § 2506. The crime of DDRD "consists of two principal elements: (i) intentionally administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substance and (ii) death caused by (resulting from) the use of that drug." **Burton**, 234 A.3d at 830 (internal citations, quotations, and brackets omitted).[10] As this Court has explained, the DDRD statute requires but-for causation such that the defendant's action with the drugs was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result, "so long as the defendant's actions were not so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible." **See Commonwealth v. Scott**, 325 A.3d 844, 850 (Pa. Super. 2024) (internal citation and quotations omitted). This Court has further held that a user's death is a foreseeable consequence of selling heroin to him. **See Commonwealth v. Kakhankham**, 132 A.3d 986, 995 (Pa. Super. 2015); **see also Scott**, 325 A.3d at 850 (holding that delivering fentanyl likewise evinces a reckless disregard of death from its use).

---

[10] To commit DDRD, a person must intentionally act to provide contraband; and the victim's death must be the result of the defendant's reckless disregard of death from the use of the contraband. **See Burton**, 234 A.3d at 830.

As noted above, Long, in his first issue, asserts trial counsel was ineffective for declining to raise on appeal the sufficiency of the evidence for the DDRD conviction, specifically, whether he delivered the drug that caused Dunlap's death. Long maintains that "neither expert forensic pathologist was able to testify for sure as to which drug killed [Dunlap]," and, according to the defense expert, "just one of the drugs that was above a lethal level in [Dunlap's] system could have caused her death." Long's Br. at 15. Long also points out that no witness testified to directly seeing him give fentanyl to Dunlap. *See id*.

The PCRA court considered Long's issue and concluded it merits no relief:

> . . . [T]estimony from the Commonwealth and both expert forensic pathologists clearly indicate that [f]entanyl was a direct and substantial cause of the victim's death. Doctor [] Rozin testified on behalf of the Commonwealth:
>
> > Commonwealth: . . . [B]ased on your training and experience and the number of autopsies you've done, did Fentanyl, was it a substantial factor in causing her [the victim's] death?
> >
> > Dr. Rozin: Yes . . ... The amount of [f]entanyl was seventy-six (76) nanogram per milliliter.
>
> [N.T., 1/14/20, at] 169-170.
>
> [Dr.] Luckasevic testified on behalf of [Long] that [Dunlap] died of combined drug toxicity of methamphetamine, fentanyl and acetyl fentanyl. Dr. Luckasevic stated that the victim had a fentanyl level of seventy[-]six (76) nanograms per milliliter and

- 15 -

that the lethal level is three (3) nanograms per milliliter. [**See i]d**. at 36. On cross-examination, Dr. Luckasevic[] testified:

Trial Counsel: So, the fentanyl — just take out the methamphetamine — the fentanyl was enough and was in this case, as you indicated, a significant causation — a significant factor and causation in [Dunlap's] death?

Dr. Luckasevic: Correct.

[N.T., 1/15/20, at] 46 (emphasis added).

Both expert forensic pathologists testified that fentanyl was the significant and substantial cause of the victim's death, which proves the causation element of the crime of DDRD. . ..

PCRA Ct. Op., 8/21/23, at 7-8.

Based on our review, there is no question the fentanyl was a direct and substantial factor in producing Dunlap's death, even if she had other drugs in her system which also may have contributed to her death. Thus, a sufficiency challenge on these grounds is meritless. **See Scott**, 325 A.3d at 844; **see also Commonwealth v. Proctor**, 156 A.3d 261, 270-71 (Pa. Super. 2017) (causation for purposes of DDRD is satisfied even if the victim died of combined drug toxicity so long as the drugs sold to the victim were a direct and substantial factor in producing the death). Additionally, it is of no moment that Long did not personally administer the drugs, and that O'Day may have administered the fentanyl to Dunlap, because the elements of the DDRD statute are satisfied even if a defendant conveys drugs to a third party who then conveys them to the ultimate victim who is unknown to the defendant,

as is the case here. *See Commonwealth v. Storey*, 167 A.3d 750, 758 (Pa. Super. 2017). The DDRD statute does not require that a defendant personally administer the drugs. *See id*. To the extent Long argues no one saw him provide the drugs to Dunlap, the jury credited O'Day's testimony that Long provided the drugs to her and O'Day. For these reasons, a challenge to the sufficiency of the evidence of the DDRD conviction is meritless, and trial counsel cannot be ineffective for failing to pursue a meritless claim on appeal. *See Rivera*, 199 A.3d at 384. Thus, Long's first issue warrants no relief.

In his second issue, Long asserts ineffectiveness arising from trial counsel's decision to not object to the admission of phone records tying Long to the sale of fentanyl to Dunlap.

With respect to the admission of evidence, including digital evidence, this Court has explained:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Electronic communications, such as text messages, must be authenticated prior to their admission. Proof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing.

*Commonwealth v. Murray*, 174 A.3d 1147, 1156 (Pa. Super. 2017) (internal citations and quotations omitted).

Regarding authentication, Pa.R.E. 901(a) provides: "Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901 further states:

(11) *Digital Evidence.* To connect digital evidence with a person or entity:

    (A) direct evidence such as testimony of a person with personal knowledge; or

    (B) circumstantial evidence such as:

        (i) identifying content; or

        (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(11). This Court has noted that authentication "generally entails a relatively low burden of proof; in the words of Rule 901 itself, simply 'evidence sufficient to support a finding that the item is what the proponent claims.'" *Murray*, 174 A.3d at 1157 (some internal citations and quotations omitted).

Long argues trial counsel was ineffective for failing to object to the admission of the phone records "regarding drug transactions with [Dunlap]." Long's Br. at 16. Specifically, Long maintains that "the phone records were not in fact from a Verizon account under his name[,] but were under an account of another individual, despite Corporal Balcik's testimony that the number identified was that of [] Long. No Verizon records were produced specifically to show that the phone account was controlled in any way [sic] by [] Long," and, accordingly, trial counsel should have objected. Long's Br. at 16.

- 18 -

The PCRA court considered Long's arguments and concluded they merit no relief for the following reasons:

> During the jury trial, Corporal [] Balcik . . . testified as follows:
>
> > The phone number identified to belong to [] Long, those records are retained by Verizon, as that's where he pays his bill to, and that's who he's a customer of. . .
>
> [N.T., 1/14/20, at] 12.
>
> Corporal Balcik testified that a valid search warrant was executed to seize [Long's] cell phone. During his police interview [Long] related that "his cellphone is important to him. It's something he carries all the time. He doesn't let anybody borrow it. It's his device." *Id*. at 20.
>
> During trial the Commonwealth admitted [an exhibit] which was a portion of a software-generated report that contained text messages taken from [Long's] cell phone. Corporal Balcik read numerous text messages into evidence that linked [Long] to his use of the cell phone as well as text messages dealing with [Long]'s case. [*See i*]*d*. at 51-125.
>
> [Long] has failed to sustain his burden of demonstrating the first prong of the ineffectiveness test in his "false evidence" claim, *i.e.*[,] that the underlying legal claim has arguable merit. Whether [Long] himself paid the Verizon cell phone bill is irrelevant. Corporal Balcik's testimony, along with the content of the text messages recovered from the cell phone, sufficiently establish [Long's] possession or ownership of the cell phone. Therefore, [Long's] claim is without merit.

PCRA Ct. Op., 8/21/23, at 4-5.

Following our review, we conclude Long's issue is meritless. Long admitted to Corporal Balcik that the phone was his, and it was recovered from his residence. Additionally, it contained indicia that he used the phone to send text messages, including specific texts to his daughter in response to her text

messages in which she noted she was communicating with him. ***See*** N.T., 1/14/20, at 53-54. Further, Long responded to inquiries from others about him being investigated in relation to Dunlap's death. For these reasons, the records were sufficiently authenticated, ***see*** Pa.R.E. 901(11); ***Murray***, 174 A.3d at 1157. Thus, Long's assertion of ineffectiveness in connection with the admission of the phone records is meritless.

Lastly, in his third issue, Long asserts the ineffectiveness of trial counsel for failing to call witnesses who were favorable to the defense. When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements by establishing that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Sneed***, 45 A.3d 1096, 1108-09 (Pa. 2012) (internal citations omitted).

Long argues that trial counsel was ineffective for failing to call Dallas and Knight who would have "called into question who owned and sent text messages from the cell phone in question," and who injected the fatal drugs into Dunlap. Long's Br. at 16. Long argues that Knight, if called, would have testified that O'Day was the one who "always injected [Dunlap's] drugs into her." ***Id***. at 17. Additionally, Long asserts that, if called, Dallas would have

testified that his phone was on her account and that the phone seized was

actually hers. *See id*.

The PCRA court considered Long's arguments and concluded they merit

no relief for the following reasons:

> . . . [T]he court finds that [Long] is unable to sustain his burden of demonstrating the fourth element in his claim, *i.e.* the absence of the testimony was so prejudicial as to have denied him a fair trial.
>
> [Long] indicates that [prospective] witness [] Dallas would have testified that she owned and used the cell phone that was seized. According to [Long], testimony from this witness would have called into question the ownership of the cell phone. Even assuming that assertion is true, the Commonwealth produced significant evidence at trial proving [Long's] use of the phone for drug dealing purposes and produced specific information identifying his use, including the numerous previously mentioned text messages derived from a software-generated report. Therefore, [Long] is unable to establish undue prejudice and his ineffectiveness claim relating to . . . Dallas is without merit.
>
> [Long also] asserts that the testimony of witness [] Knight would have proved that [] O'Day was solely responsible for injecting the drugs into the victim and that [Long] never injected the victim with drugs. Even assuming that assertion is true, this claim is irrelevant[,] as [Long] was not charged with personally injecting drugs into the victim but was charged with delivering fentanyl, the drug that resulted in her death. . ..
>
> The court finds the Commonwealth met their burden regarding the DDRD charge and that the potential testimony by [] Knight would not have established a different outcome at trial. Therefore, [Long] could not have been prejudiced by trial counsel's failure to call [] Knight as a witness at trial. Thus, [Long] is unable to establish undue prejudice and his ineffectiveness claim relating to . . . Knight is without merit.

PCRA Ct. Op., 8/21/23, at 5-7

- 21 -

Following our review, we find no error of law or abuse of discretion in the PCRA court's reasoning. As noted above, the DDRD statute does not require that Long personally injected Dunlap with the drugs in order for him to be criminally liable, but rather that he distributed the fentanyl that killed her. Thus, Knight's prospective testimony is immaterial to the Commonwealth's theory of the case and the evidence of Long's culpability for selling the drugs that caused Dunlap's death. Additionally, as the PCRA court noted, Long admitted to officers that the phone, with the inculpatory messages, and which placed him at the location Dunlap's body was dumped, was his; further, O'Day's testimony, which the jury credited, incriminated Long. Thus, in light of the overwhelming evidence of guilt—including Long's own admissions that the phone was his, in combination with the indicia of ownership of the phone such as the messages to and from his daughter, and the fact that the phone was recovered from his trailer and was right next to him; and considering O'Day's testimony—it cannot be said that the failure to call Dallas as a witness prejudiced Long to the extent that it deprived him of a fair trial. **See Sneed**, 45 A.3d at 1108-09. Accordingly, this issue merits no relief.

Additionally, Long, citing, *inter alia*, **Commonwealth v. Greer**, 316 A.3d 623 (Pa. 2024), has sent *pro se* correspondence to this Court seeking a remand to the PCRA court to argue for the ineffective assistance of appellate counsel. **See** *Pro Se* Mot. to Remand to the PCRA Court to Reargue Ineffective

Appellate Counsel, 6/16/25 (dated June 10, 2025). In his *pro se* letter, Long argues PCRA appellate counsel, Attorney Fryling, was ineffective for failing to raise correct, and additional, claims in the appellate brief. ***See generally id***. (unnumbered at 3).

We note that Attorney Fryling filed her brief on January 27, 2025, over five months before Long filed his *pro se* motion for a remand to the PCRA court. This Court, in ***Greer***, held that if an appellant seeks to proceed *pro se* on appeal, the proper response is to "remand to the lower court for an on-the-record hearing to determine whether the waiver of counsel is knowing, intelligent, and voluntary." 316 A.3d at 629. However, "***if the request to proceed pro se is filed after counsel has filed a merits brief, the request is considered untimely***." ***Id***. (emphasis added). Thus, to the extent Long seeks a remand to proceed *pro se*, under these circumstances—*i.e.*, where Long has waited until months after his appellate brief was filed to move for a remand—we conclude Long's *pro se* motion for a remand is untimely, and we decline to consider it. ***See Greer***, 316 A.3d at 629 (providing that "if the request to proceed *pro se* is filed after counsel has filed a merits brief, the request is considered untimely"); ***accord Commonwealth v. Robinson***, 320 A.3d 732, 739 (Pa. Super. 2024) (holding that a *pro se* request for a remand for a hearing to proceed *pro se* is untimely if filed after a counseled brief is filed).

However, we observe that, pursuant to ***Commonwealth v. Walter***, 335 A.3d 1197, 1199 (Pa. Super. 2024), a petitioner may still assert a claim of ineffectiveness against PCRA appellate counsel after the filing of PCRA appellate counsel's merits brief, but before the disposition of the appeal, consistent with ***Bradley***. Thus, to the extent Long seeks to present ineffectiveness claims against Attorney Fryling consistent with ***Walter*** and ***Bradley***, we set forth the applicable law for ***Bradley*** claims as follows.

"Whe[n] a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." ***Commonwealth v. Parrish***, 273 A.3d 989, 1004 n.11 (Pa. 2022). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the ***first attorney*** that the petitioner asserts was ineffective did, in fact, render ineffective assistance of counsel." ***Commonwealth v. McCready***, 295 A.3d 292, 299 (Pa. Super. 2023) (internal citation, quotations, and brackets omitted; emphasis in original). Our Supreme Court has provided that, "[i]n some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims," though, "in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter." ***Bradley***, 261 A.3d at 402 (internal citation omitted).

In his first argument, Long asserts unspecified constitutional errors based on his claims that: the drug that killed Dunlap was not fentanyl, but improperly administered Narcan; and he was denied a fair trial because he had no opportunity to confer with his expert before the expert testified, and he should have had an expert who would have opined that there was an equal chance that any of the drugs in Dunlap could have killed her. *Pro Se* Mot., 6/16/25 (unnumbered at 1).[11] Long also, seemingly, asserts the following issues:

(1) A constitutional violation in the search of the phone he maintains belonged to Dallas. ***See id***. (unnumbered at 3-5).

(2) An alleged knock and announce violation during the execution of the first search warrant on October 3, 2017. ***See id***. (unnumbered at 5-6).[12]

(3) An assertion that police searched his residence on October 3, 2017 prior to the issuance of a second search warrant. ***See id***. (unnumbered at 5-6).

(4) A claim that the warrant for his arrest was defective for reasons that are difficult to comprehend, but which was

---

[11] Some of the pages in Long's motion are numbered, some are not, and the numbering is inconsistent. Accordingly, we consider the motion unnumbered and enumerate the pages beginning on the first page of the filing, which is a one-page letter affixed to the front of the motion.

[12] This Court has explained that the "knock and announce" rule, codified at Pa.R.Crim.P. 207, "requires that police officers announce their identity, purpose and authority and then wait a reasonable amount of time for the occupants to respond prior to entering any private premises[,]" unless there are exigent circumstances. ***Commonwealth v. Frederick***, 124 A.3d 748, 754 (Pa. Super. 2015).

defective ostensibly because, Long alleges, no testing of the substances found in his trailer had occurred prior to the issuance of the arrest warrant, and the police destroyed their own evidence for unstated reasons. *See id*. (unnumbered at 6-7).

(5) A claim that his trial counsel entered into a conspiracy with the Commonwealth to convict him of the charged offenses, and, pursuant to that conspiracy, declined to object to the admission of inculpatory text messages and phone records, and agreed to the Commonwealth's fabrication of the factual basis of criminal charges. *See id*. (unnumbered at 8-10).

We note, initially, that Long's *pro se* motion for relief hinges on the alleged ineffectiveness of Attorney Fryling. Yet, Long has failed to properly develop all three prongs of the ineffectiveness test for each claim, but instead simply argues the merits of the underlying claims and asserts Attorney Fryling was ineffective for failing to present them. For this reason, Long has failed to show PCRA appellate counsel's ineffectiveness, and his claims merit no relief. *See Commonwealth v. Jones*, 876 A.2d 380, 386 (Pa. 2005) (noting that the Court has previously held that "the mere tacking on of a sentence stating that all prior counsel were ineffective for failing to raise underlying claims of error does not satisfy Appellant's burden of establishing that he is entitled to post[-]conviction relief on ineffective assistance of counsel claim").

In any event, we also address Long's additional *Bradley* claims *seriatim*. With respect to his bald assertion of unspecified constitutional errors predicated on his claim that Narcan and/or a combination of drugs killed Dunlap, we observe that two experts, including Long's expert, testified at trial that the fentanyl was a substantial factor in Dunlap's death, which is all the

DDRD statute requires regarding causation; accordingly, Long's claims of constitutional error and/or ineffectiveness against Attorney Fryling for failing to argue this issue is meritless. **See Rivera**, 199 A.3d at 384.

Next, to the extent Long advances a layered ineffectiveness claim based on the uncontested admission of phone records he maintains belonged to Dallas because of a constitutional violation vis-à-vis Dallas, we note that Long has no standing to contest the propriety of the search based on an alleged violation of Dallas's constitutional rights. **See**, **e.g.**, **Commonwealth v. Moore**, 310 A.3d 802, 806 (Pa. Super. 2024) (noting that, "[g]enerally, to have standing to pursue a suppression motion . . . the defendant's own constitutional rights must have been infringed"). Accordingly, trial counsel cannot be ineffective for again failing to raise a meritless claim, and Long's layered ineffectiveness claim fails.

Regarding his assertion of a knock and announce violation in the execution of the search warrant for Long's phone, we note that Long focuses on the merits of an argument predicated on the asserted violation, but does not attempt to situate his argument in context of the three-prong ineffectiveness test. Notwithstanding this deficiency, we note that the trial testimony of Corporal Balcik is that officers, upon arrival to execute a search warrant for Long's cell phone, knocked and called out to Long prior to entering his residence, and only entered initially because Long was unresponsive, after which they tapped him on his shoulder to wake him up. **See** N.T., 1/14/20,

at 19. Trooper Knirnschild likewise testified that he and Corporal Balcik knocked prior to entering, but he was unable to recall anything further. ***See*** N.T., 1/13/20, at 118. While Long highlights ambiguities in other respects—including whether after waking up, he spoke with officers at the door, in the yard, and whether he invited them in during their discussion—these ambiguities are not germane to the issue of whether officers, as required by Pa.R.Crim.P. 207, initially made a reasonable effort to give notice of their identity, authority, and purpose prior to entering his residence. The testimony of Corporal Balcik and Trooper Knirnschild suggests they did, and Long adduces nothing to rebut the evidence of record. Thus, because Long has failed to demonstrate that this suppression motion, if filed, would have been successful, and further, if successful, would have changed the outcome of the trial, we conclude his layered ineffectiveness claim against Attorney Fryling for failing to pursue this issue merits no relief. ***See Loner***, 836 A.2d at 132 ("Counsel cannot be deemed ineffective for failing to pursue a meritless claim.").

Long next raises a layered ineffectiveness claim for failure to pursue suppression of the search of his trailer, conducted pursuant to a second warrant, because, Long asserts, police searched his residence prior to the issuance of that warrant. Specifically, police obtained a second warrant to search his house based on their observations—during the execution of the first warrant to recover Long's phone—of drug indicia in plain view. Long argues

that officers performed the second search approximately two hours prior to obtaining the second warrant. *See Pro Se* Mot., 6/16/25 (unnumbered at 7-8). Our review of Long's *pro se* PCRA petition and response to the PCRA court's Rule 907 notice of intent to dismiss his petition reveals he did not raise this claim below, accordingly, it is waived. ***See generally*** PCRA Pet., 10/6/22, at 4, 7, 11-15 (raising various assertions of ineffectiveness but not asserting an illegal search in connection with the search warrant for his trailer); Response to Rule 907 Notice, 9/7/23 (unnumbered at 1-2) (discussing the "knock and announce" and cell phone records issues, but not an illegal entry prior to the issuance of the search warrant for his trailer). ***See also Commonwealth v. Jones***, 912 A.2d 268, 278 (Pa. 2006) (holding that "an issue is waived where it was not presented in the original or amended PCRA petition below").

Next, Long seemingly challenges the warrant for his arrest—he argues ostensibly that the warrant was invalid based on either a lack of factual support and/or destruction by officers of evidence the warrant was predicated on—but we are unable to discern whether this argument constitutes an ineffectiveness claim pursuant to section 9543(a)(2)(ii) or an assertion of an independent constitutional error under section 9543(a)(2)(i). *See Pro Se* Mot., 6/16/25 (unnumbered at 9-10). We conclude Long's failure to provide a clear, cogent, and developed argument constitutes waiver of this issue. ***See Commonwealth v. Reich***, --- A.3d ----, 2025 WL 1740140 at *11 n.8 (Pa.

Super. 2025) (providing that where an appellant fails to develop an issue in a meaningful fashion capable of review, that claim is waived); *Commonwealth v. Westlake*, 295 A.3d 1281, 1286 n.8 (Pa. Super. 2023) (noting that while this Court liberally construes materials filed by *pro se* litigants, a *pro se* appellant enjoys no special benefit). Additionally, we observe that Long did not include this issue in his PCRA petition or response to the PCRA court's Rule 907 notice; accordingly, it is waived for these reasons as well. *See Jones*, 912 A.2d 278.

Long additionally raises an ineffectiveness claim based on Attorney Fryling's ineffectiveness for failing to raise trial counsel's conspiracy with the Commonwealth to convict him. *See Pro Se* Mot., 6/16/25 (unnumbered at 11-13) ("[I'm] trying to illustrate to the Court the reasons i belive [sic] my attorney actively entered into and engaged in a conspricy [sic] to get me found guilty of a crime i didn't commit because the district attorney asked him to [sic]." Our review of Long's *pro se* PCRA petition and response to the PCRA court's Rule 907 notice of intent to dismiss his petition reveals he did not raise this claim below, accordingly, it is waived. *See generally* PCRA Pet., 10/6/22, at 4, 7, 11-15 (raising various assertions of ineffectiveness but not asserting trial counsel conspired with the Commonwealth); Response to Rule 907 Notice, 9/7/23 (unnumbered at 1-2) (discussing the knock and announce and cell phone records issues, but not asserting a conspiracy by trial counsel with the Commonwealth); *see also Jones*, 912 A.2d at 278.

In sum: none of the issues in Long's brief, filed by Attorney Fryling, merit relief. Additionally, Long's request for relief in his *pro se* correspondence to this Court, to the extent he seeks a remand to the PCRA court based on *Greer*, is untimely. To the extent Long asserts ineffectiveness claims against Attorney Fryling based on *Walter* and *Bradley*, Long's claims are unavailing.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/17/2025